GUADALUPE–BLANCO RIVER
AUTHORITY, Petitioner,

v.

Marvin KRAFT, Sr., Respondent.

No. 01–0150.

Supreme Court of Texas.

Argued Jan. 30, 2002.

Decided May 9, 2002.

Justice ENOCH delivered the opinion of the Court.

The Guadalupe–Blanco River Authority ("the Authority") questions whether Marvin Kraft, Sr., demonstrated that his expert witness's real estate appraisal opinion was reliable under *Gammill v. Jack Williams Chevrolet, Inc.*[1] Kraft responds that his expert used the judicially approved comparable sales methodology to arrive at his opinion. But the expert based his opinion on local sales that were not comparable to the condemned land. Therefore his opinion was not reliable, and the trial court abused its discretion by admitting his testimony. Because the court of appeals held otherwise,[2] we reverse that court's judgment and remand this case to the trial court.

## I

Kraft owns a 272–acre unimproved tract in Hays County that he uses as grazing land for his cattle. The Authority instituted a condemnation action against Kraft seeking a permanent easement across his property to lay part of the twenty-mile water pipeline the Authority is constructing from the Guadalupe River to a water treatment plant in San Marcos. The easement consists of a strip thirty feet wide by 4,600 feet long, with temporary easements thirty-five feet wide running along either side, cutting diagonally across Kraft's property. Although part of Kraft's land fronts on Highway 123 with utilities ac-

cess, the condemned easement is 3,900 feet from the highway at its closest point. The pipeline, which has already been installed, is entirely underground except for three boxes that will allow the Authority to periodically test the pipeline's condition. The easement will not affect the property's continued use as grazing land.

As Kraft challenged the Authority's valuation of his condemned property, a trial was held on that issue. At trial, both Kraft and the Authority produced real estate appraisal experts; Kirby Gholson for Kraft and Albert Menn for the Authority. But before Gholson began testifying for Kraft, the Authority objected to his testimony on the grounds that it was not reliable as required by this Court in *Gammill*.[3] The trial court excused the jury, and both sides questioned Gholson on voir dire.

During voir dire Gholson explained that he had used the comparable sales approach to determine the condemned easement's market value: "where you search the market for what's considered to be ... sales comparable to the subject and then make [the] decision as to what the subject is worth based on these current sales." But because there were no comparable sales of narrow easements in the local market, Gholson testified that he reconfigured the actual thirty-by 4,600-foot strip into a hypothetical rectangular tract of 3.2 acres to facilitate his comparison analysis. He also relocated the hypothetical tract to front on Highway 123 with direct utilities access. Gholson testified that he then found two recent and local land sales with characteristics similar to his hypothetical property: small, roughly rectangular tracts with utilities on site; one located in a commercial area fronting on Highway

---

1.  972 S.W.2d 713 (Tex.1988).

2.  39 S.W.3d 264, 271.

3.  *See Gammill*, 972 S.W.2d at 725–26.

123 and the other in a residential subdivision with frontage on a county road. As the final step in his analysis, Gholson made adjustments to these "comparable sales" to determine the value of his hypothetical tract, which he equated with the value of the condemned easement. The trial court overruled the Authority's objection to Gholson's opinion, and Gholson presented his analysis and conclusions to the jury.

Gholson testified that, using his method, the fair market value of the permanent and temporary easements and the damage to the remainder of Kraft's property due to the condemnation was $64,400. The Authority's expert, Albert Menn, also used the sales comparison method to measure the value of the easement. But Menn testified that because the land condemned did not stand on its own as a marketable unit, to measure its value he found the value of the entire property by reference to similar local sales, and then took a pro rata deduction. Using this approach, Menn concluded that the temporary and permanent easements taken by the Authority were worth $7,630. The jury valued the easement at $64,400, reflecting Gholson's opinion exactly.

## II

■ Kraft argues that the Authority failed to preserve error through its objection to Gholson's testimony because the basis of its objection was not made clear to the trial court, and because the Authority did not move to strike Gholson's testimony and offered no objection to Kraft's tender of a summary of Gholson's appraisal. The court of appeals held that the Authority preserved error.[4] We agree. To preserve a complaint that an expert's testimony is unreliable, a party must object to the testimony before trial or when it is offered.[5] When Gholson began his testimony, the Authority objected: "I'm going to make an objection based upon the failure of this witness's methodology to meet the reliability standards as articulated by the Supreme Court in *Gammill versus Jack William[s] Chevrolet* as applying to all expert testimony." After voir dire, the trial court overruled the objection. The objection was timely, its basis was clear, and the Authority obtained a ruling. The Authority preserved its complaint for our review.[6]

## III

■ In *Gammill* we held that all expert testimony must be relevant and reliable under Evidence Rule 702.[7] This includes the testimony of expert appraisal witnesses in condemnation actions. Appraisal expertise is a form of "specialized knowledge [used to] assist the trier of fact to ... determine a fact in issue."[8] It is therefore subject to *Gammill's* relevance and reliability requirements.[9] Once the Authority made its objection, the burden was on Kraft to establish that Gholson's opinion was reliable.[10] We review the trial court's decision to admit the testimony for an abuse of discretion.[11]

■ The court of appeals, accepting Gholson's claim that he had used the judi-

---

**4.** 39 S.W.3d at 266.

**5.** *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 409 (Tex.1998).

**6.** *See* Tex.R.App. P. 33.1(a).

**7.** *See Gammill,* 972 S.W.2d at 726; Tex.R. Evid. 702.

**8.** Tex.R. Evid. 702.

**9.** *See Gammill,* 972 S.W.2d at 726; *see also City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 183 (Tex.2001).

**10.** *See Gammill,* 972 S.W.2d at 718.

**11.** *See id.* at 727.

cially accepted sales comparison method for land valuation, held that the trial court did not abuse its discretion in admitting Gholson's appraisal testimony.[12] We disagree. While using comparable sales to find market value in condemnation proceedings is an approved methodology, Gholson's "bald assurance" that he was using that widely accepted approach was not sufficient to demonstrate that his opinion was reliable.[13] In *Merrell Dow Pharmaceuticals, Inc. v. Havner*, we rejected the "view that courts should not look beyond an averment by the expert that the data underlying his or her opinion are the type of data on which experts reasonably rely."[14] Instead, we held that the "underlying data should be independently evaluated in determining if the opinion itself is reliable."[15] Although Gholson claimed to be using comparable sales to find the condemned easement's value, a review of Gholson's "underlying data" reveals that the local sales he relied on were not comparable to the condemned easement. Gholson's methodology ignored the central requirement of any reliable appraisal technique: that it first seek to determine the "fair market value of the *strip actually taken.*"[16] In short, Gholson's comparison of current sales to a hypothetical tract vastly dissimilar from the easement taken was not the judicially accepted method for finding the value of that easement. Thus

his opinion, based on that comparison, was not reliable. The trial court therefore abused its discretion in admitting Gholson's testimony.[17]

Gholson's analysis was not designed to find the market value of the easement actually condemned; it was designed to find the market value of a piece of land the Authority did not take: a 3.2 acre rectangular tract with frontage on Highway 123 and direct utilities access. The comparable sales method fails when the comparison is made to sales that are not, in fact, comparable to the land condemned.[18] The two sales Gholson used as comparables may have had characteristics similar to his hypothetical tract, but they were not comparable to the easement actually taken.[19] The easement condemned ran through undivided grazing land 3,900 feet from the highway and utilities access; the sales Gholson used were commercial and subdivided residential tracts with road frontage and utilities directly on site. These sales were not comparable to the condemned easement as a matter of law.[20] Kraft therefore failed to demonstrate that Gholson's opinion on the value of the condemned tract was reliable.[21]

Kraft argues that this Court's opinion in *State v. Windham*[22] supports the methodology he used. We disagree. *Windham* involved valuation of a condemned tract

12. 39 S.W.3d at 267–71.

13. *See Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 712 (Tex.1997).

14. *Id.* at 713.

15. *Id.*

16. *State v. Meyer,* 403 S.W.2d 366, 371 (Tex. 1966) (emphasis added); *see also Sharboneau,* 48 S.W.3d at 183.

17. *See Sharboneau,* 48 S.W.3d at 186.

18. *See id.* at 182–83.

19. *See id.*

20. *See, e.g., id.; City of Austin v. Cannizzo,* 153 Tex. 324, 267 S.W.2d 808 (1954); *Urban Renewal Agency of Austin v. Georgetown Sav. & Loan Ass'n,* 509 S.W.2d 419 (Tex.Civ.App.-Austin 1974, writ ref'd n.r.e.); *City of Garland v. Joyce,* 462 S.W.2d 86 (Tex.Civ.App.-Waco 1970, writ ref'd n.r.e.).

21. *See, e.g., Havner,* 953 S.W.2d at 713.

22. 837 S.W.2d 73, 75–76 (Tex.1992).

that, standing alone, was not marketable as an independent unit reflecting the property's highest and best use.[23] To determine the tract's value using the sales comparison method, both parties added parts of Windham's surrounding property to the part being appraised until it constituted a self-sufficient economic unit. Both parties found recent, local sales similar to this self-sufficient tract, made adjustments to determine its value, and then took a pro rata deduction to find the market value of the part condemned.[24] Thus both parties in *Windham* applied a methodology similar to that employed by the Authority's expert here.

The dispute in *Windham* was over how much more of the total acreage should be added to the strip of land taken in order to get to a marketable unit. Windham's expert testified that the condemned tract's highest and best use was for commercial development, and so added only the acreage necessary to constitute an economic unit for commercial development purposes.[25] The State's expert testified that the property's highest and best use was to hold it for investment purposes, and so he added Windham's entire remainder to the tract condemned.[26] The question in *Windham* was thus whether, when the land taken is not independently marketable as a unit reflecting the property's highest and best use, the landowner alone can designate how much land to add to the tract condemned in order to form an appropriately marketable economic unit.[27] We held that the jury should be given the

opportunity to consider all competing evidence of valuation supported by admissible expert testimony.[28]

■ *Windham* is consistent with our holding today. Determining the fair market value of narrow easements such as the Authority condemned here may prove difficult if comparable easement sales are unavailable. *Windham* by analogy demonstrates the propriety of adding some of the surrounding land to a condemned strip to form a marketable unit that can then be reasonably compared to local sales of similar units.[29] By taking a pro rata deduction in the value found, this method, approved in *Windham*, may be used to establish the strip's market value.[30] In this case, the Authority used a similar method to value the condemned easement. But Gholson based his opinion on a methodology that created a hypothetical tract of land and determined its value, not the pro rata value of the "strip actually taken."[31] As a result, his opinion was not reliable, and therefore his testimony was inadmissible.[32] The trial court thus abused its discretion by admitting the testimony, and the court of appeals erred in affirming the trial court's judgment. Because the jury's finding was based directly on that inadmissible testimony, the error was harmful.

## IV

Expert appraisal testimony must be reliable. Although Gholson asserted that he used the sales comparison method to value the condemned easement, his comparable

23. *See id.* at 74.

24. *See id.* at 74–75.

25. *See id.* at 74.

26. *See id.* at 75.

27. *See id.* at 76–77.

28. *See id.* at 77.

29. *See id.* at 76.

30. *See id.*

31. *Meyer,* 403 S.W.2d at 371.

32. *See Gammill,* 972 S.W.2d at 720.

sales were similar not to the strip of land taken, but to a hypothetical tract reconfigured and relocated to a portion of Kraft's property with markedly different characteristics. Because Gholson's opinion was based on this comparison of incomparables, his opinion on the value of the land actually condemned was not reliable. Thus, Gholson's testimony did not meet *Gammill's* requirements for admissibility. The trial court should have sustained the Authority's objection and excluded Gholson's testimony; its failure to do so was an abuse of discretion. We therefore reverse the court of appeals' judgment and remand this case to the trial court for further proceedings consistent with this opinion.