NO. 07-01-0210-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 10, 2003

_____

IN THE INTEREST OF G. B., P. B., I. B., M. L., AND J. B., CHILDREN

_____

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 31,563; HONORABLE LEE WATERS, JUDGE

_____

Before JOHNSON, C.J., and REAVIS, JJ. and BOYD, S.J.[1]

**MEMORANDUM OPINION**

Appellant Connie Ballard presents eleven points of error challenging a judgment terminating her parental rights to G.B, P.B., I.B., M.L., and J.B. based upon a jury verdict. By her first ten points, Connie claims the trial court erroneously admitted testimony and exhibits offered by the Texas Department of Protective and Regulatory Services (the Department) and by her final point Connie argues she was deprived of her right to fully

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

cross-examine the Department employee assigned to her case. Based upon the following rationale, we affirm.

Connie's brief does not "state concisely and without argument the facts pertinent to the issues or points presented." Tex. R. App. P. 38.1(f). Moreover, she does not contradict the fact statement contained in the Department's brief; thus, we will accept it as true. *Id.*; *see* Ingalls v. Standard Gypsum, L.L.C., 70 S.W.3d 252, 261 (Tex.App.–San Antonio 2001, pet. denied). Finally, because Connie does not present a challenge to the sufficiency of the evidence to support the jury findings only a brief summary of the evidence is required.

At the time of trial, Connie's children ranged in age from 13 years to five months old. The Department became involved with the family in September 1999 when the next-to-youngest child, G.B., was born with cocaine in his system. The Department became Temporary Managing Conservator of G.B. and, over the next year, made various attempts to reunify him with Connie and the other children. As a result of Connie's continued drug use and failure to comply with the service plan developed by the Department, her remaining children, which then included another infant who tested positive for cocaine at birth, were placed in the Department's custody. On April 4, 2001, the Department filed its "Second Amended Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship." The case proceeded to trial not long after, and the court, following the jury's recommendation, entered an Order of Termination on April 23, 2001.

2

By her first, second, third, fourth, eighth, and ninth points of error,[2] Connie challenges the reliability of the science underlying the testimony of various "expert" witnesses called by the Department. With each contention, we disagree. We will review the trial court's determination of the admissibility of the witnesses' testimony under an abuse of discretion standard. Guadalupe-Blanco River Authority v. Kraft, 77 S.W.3d 805, 807 (Tex. 2002); Erdman v. State, 861 S.W.2d 890, 893 (Tex.Cr.App. 1993). According to rule 702 of the Texas Rules of Evidence,[3] if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. Once the opposing party objects to proffered expert testimony, the proponent of the witness's testimony bears the burden of demonstrating its admissibility. See Kraft, 77 S.W.3d at 807. To be admissible, expert testimony must be (1) sponsored by a qualified individual, (2) relevant, and (3) based upon a reliable foundation. In re C.D.K., 64 S.W.3d 679, 682-83 (Tex.App.–Amarillo, 2002, no pet.). The trial court acts as a "gatekeeper" with respect to determining whether the proponent has made the requisite threshold showing of admissibility. See Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 720 (Tex. 1998).

---

[2]Many of Connie's points of error are multifarious because they embrace more than one specific ground of error. Zeolla v. Zeolla, 15 S.W.3d 239, 241 n. 2 (Tex.App.–Houston [14th Dist.] 2000, pet. denied). However, if we can ascertain the alleged errors which the complaints address with reasonable certainty, we will address them, despite the form of the issues. Id.

[3]Unless otherwise designated, all rule references are to the Texas Rules of Evidence.

3

With respect to the reliability element, the trial court may consider the following non-exclusive list of factors in making the threshold determination of admissibility:

(1) the extent to which the theory has been or can be tested;

(2) the extent to which the technique relies upon the subjective interpretation of the expert;

(3) whether the theory has been subjected to peer review and/or publication;

(4) the technique's potential rate of error;

(5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and

(6) the non-judicial uses which have been made of the theory or technique.

*Gammill*, 972 S.W.2d at 720. Common sense demands that the evidence proffered to show reliability include the actual methods and principles being debated. *In re C.D.K.*, 64 S.W.3d at 683.

The preceding factors apply in many "hard science" situations. However, when addressing fields of study aside from the hard sciences, such as the social sciences or fields that are based primarily upon experience and training as opposed to scientific method, the appropriate questions are:

(1) whether the field of expertise is a legitimate one;

(2) whether the subject matter of the expert's testimony is within the scope of that field; and

(3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field.

4

*Nenno v. State*, 970 S.W.2d 549, 561 (Tex.Cr.App. 1998), *overruled in part on other grounds*, 4 S.W.3d 720 (Tex.Cr.App. 1999).  The trial court must exercise its discretion to identify and employ other factors as necessary to assess the reliability of the proffered testimony.  *In re J.B.*, 93 S.W.3d 609, 621 (Tex.App.–Waco 2002, no pet.).

The testimony of Tim Powers, Larry Lance, and Roy Orr forms the basis of Connie's first through fourth points.  These witnesses testified about the results of various drug tests administered to Connie during her last three pregnancies and to her youngest son at his birth.  Specifically, at trial, Powers testified that Connie tested positive for cocaine in March of 2000 and for marihuana five times over the course of the following year.[4]  Prior to his trial testimony, at a gatekeeping hearing outside the presence of the jury, Powers averred that his lab utilized an automated colorimetric method[5] of drug analysis, in which a reagent is mixed with the patient's urine sample to determine whether a particular drug is present.  According to Powers, if the "cocaine metabolizer" is there, the patient's sample will turn a certain color.  In response to Connie's suggestion that the test was "kind of like mixing blue and yellow together and getting green," Powers maintained the process involved a "chemical reaction of the drug metabolizing in the urine with the reagent from the

---

[4]Ostensibly, Connie was pregnant with her youngest son, J.B., who was born in November of 2000, when she tested positive for cocaine in March of 2000 and for marihuana in April of 2000.

[5]Contrary to Connie's assertion in her appellate brief, the Department presented Powers only as an expert in the field of colorimetry.  Neither the Department nor Powers ever suggested he possessed expertise in gas chromatography, the method utilized to confirm the colorimetry screen testing.

manufacturer [of the analyzer machine]." He further explained that the colorimetry methodology employed in the lab is widely accepted in his field, and he opined that the test results were valid to a "reasonable certainty that's relied upon by individuals in [his] field." Considering the testimony, we conclude the trial court did not abuse its discretion. Connie's first point of error is overruled.

By Connie's second point, she complains the trial court erred under Rule 702 in admitting the records of the drug tests about which Powers testified. We disagree. Rule 702 pertains to the admissibility of expert testimony, not to that of documentary evidence. Connie's second point is overruled.

By her third point of error, Connie complains the trial court erred in admitting the testimony of Larry Lance, a chemistry supervisor for Northwest Texas Hospital who was called to testify about drug testing conducted upon Connie when she was pregnant in 1997. At the gatekeeping hearing outside the jury's presence, Lance testified that in 1997 his lab utilized the Bio-Site Triage method, which is an "antigen-antibody reaction-type of methodology" of drug screening. He explained that the test required a lab technician to place a portion of the patient's urine sample on a "card" containing antibodies for one of seven different drugs to determine whether any one of them was present in the sample. If a visible line appeared on the card as a result of the reaction between the patient's sample and the drug antibody, then the technician would interpret the test as "presumptive[ly] positive" for that drug. According to Lance, because Connie's drug screen revealed a

6

positive result, her urine specimen was sent to another laboratory for confirmation. Further, Lance averred that the Triage methodology used by the lab in 1997 was "utilized by many people" and was "FDA approved." In Lance's opinion, the drug screening test done on Connie in 1997, which presented a "presumptive positive test for cocaine metabolite and marijuana," was valid. Finally, Lance explained that the confirmation test performed on Connie's specimen, which also revealed a positive result, was widely accepted in his field of expertise. As with Powers's testimony, we conclude the trial court did not abuse its discretion in admitting Lance's testimony. Accordingly, Connie's third point of error is overruled.

Connie's fourth point contends the trial court erred in admitting the testimony of Roy Orr, the Laboratory Director for Pampa Regional Medical Center. The Department called Orr to testify about drug testing performed on Connie in August and September of 1999 and October and November of 2000. Orr also testified about a drug screen conducted on Connie's youngest child, J.B., when he was born in November of 2000. During the gatekeeping hearing outside the presence of the jury, Orr explained that his lab used two different methods of drug screening–Dade Behring and Triage. Expounding upon the former, Orr noted that it "takes the drug and it binds it to something that we can visually inspect or read." "What it does," he explained, "is it reflects that light. It reads back an absorbance level at whatever the volume is where it repeats or recalls as a positive. At that point, then it reports it as a positive." Orr also noted that the rate of error for the Dade Behring method is "about five percent," and that his lab does "correlations" as a means of

7

independently testing the apparatus used to conduct the testing to determine a rate of error. Based upon the lab's correlations, the rate of error for the Dade Behring method was "Zero." With respect to the Bio-Site Triage method, Orr testified in much the same manner as Lance, adding, however, that the Dade Behring method utilized wet reagents instead of being self-contained like the Triage test. Lance explained that when a sample tests positive for a particular drug using the Dade Behring method, his lab repeats the testing utilizing the Triage method. Orr averred that the methodology he utilized to test Connie's and J.B.'s urine was widely accepted by experts in his field and, in his opinion, the results he obtained from those tests were valid. He then announced his conclusions:

> Regarding Connie Ballard, we received – on 8-9-99 we had a positive for cocaine, a positive for THC.[6] This was performed on the Triage method. On 9-16 we received a positive of cocaine, again by Triage method. On 10-14-2000 we received a cocaine positive by both the Dade method and the Triage method. . . . On Mr. [J.B.] on 11-27-2000 we received a cocaine positive by the Dade method and the Triage method.

Concluding the trial court did not abuse its discretion in admitting Orr's testimony, Connie's fourth point of error is overruled.

By her eighth point of error, Connie contends the trial court erred in finding the methodology upon which Ann Cave testified to be reliable.[7] Connie also argues that Cave's

---

[6]We discern from the record that THC is tetrahydrocannabinoid, or marihuana.

[7]At trial, Connie objected to Cave's testimony under Rule 702 on the basis that "this particular witness [did] not meet the qualifications of an expert in the field about which she

8

testimony was inadmissible under Rule 403. With both assertions, we disagree. Cave was the licensed chemical dependency counselor for the Amarillo Council on Alcoholism and Drug Abuse who performed a chemical dependency assessment on Connie. She was also the leader of Connie's group therapy sessions during the time period in which the Department was attempting family reunification. At trial Cave testified that "[w]ith the diagnostic tool and information [she] was given, [she] came up with a diagnosis of cocaine abuse." Additionally, Cave told the jury about Connie's continued non-compliance with the twelve week chemical dependency treatment program provided by her agency. At the gatekeeping hearing, Cave testified that she based her assessment of Connie's condition upon information she received from the Department and Connie, in addition to the Substance Abuse Subtle Screening Inventory (SASSI) she administered to her. Regarding the SASSI test, Cave testified that it was 94 percent accurate and had scores that revealed whether any skewed answers invalidated the test. Moreover, Cave averred that, in conducting her assessment, she utilized tools and methodology that were widely accepted in her field of expertise. We conclude the trial court did not abuse its discretion in deeming the methodology underlying Cave's testimony to be reliable. Regarding Connie's assertion under Rule 403, her brief does not explain how the probative value of Cave's testimony was

is testifying." On appeal, Connie does not challenge Cave's qualifications, but rather attacks the reliability of the methodology upon which she based her opinions. Viewing her failure to brief why Cave did not qualify as an expert as a waiver of that portion of her point, we address only the reliability element.

substantially outweighed by unfair prejudice. Therefore, she presents nothing for our review. *See* Tex. R. App. P. 38.1(h). Connie's eighth point is overruled.

By her ninth point, Connie contends the trial court erred, in part, in "admitting the testimony of Diane Curtis over objection under Tex. R. Evid. 702, 703." We disagree. As with the witnesses discussed previously, Connie's primary objection appears to be to the methodology underlying Curtis's opinions about the best interests of the children and Connie's ability to parent. In reaching her conclusions, Curtis, who is a licensed professional counselor, testified at the gatekeeping hearing that she relied upon her interviews with Connie and the children, and Connie's results on "the SASSI, STAXI, the CAP and the Circumplex." Curtis explained that each of the tests were self-reporting, and that she had special training in a "psychological assessment course" during her Master's program to administer the tests. Also, she claimed that each of the tests, as well as the methodology she utilized to do a family assessment, were widely used and accepted in the field of licensed professional counselors. Finally, she explained that she based her opinions on her special education and personal experience. Based upon the testimony, we conclude the trial court did not abuse its discretion in admitting her testimony under Rule 702. Moreover, because Curtis's testimony was based, at least in part, upon her interviews with and observations of Connie and her children, the testimony was admissible under Rule 703. Finally, because Connie does not explain how Curtis's testimony was improper under Rule 705, this argument presents nothing for review with respect to that portion of her point of error. *See* Tex. R. App. P. 38.1(h). Connie's ninth point is overruled.

10

Citing rules 702 and 802, Connie contends by her sixth point of error that the trial court erred in allowing Norma Backs to testify that P.B. was disappointed in her mother because she was told her mother tested positive for drugs. Backs, a private practice psychologist with a doctorate in adult education and rehabilitation, was called by the Department to testify about her counseling sessions with P.B. During Backs's testimony, the following exchange occurred:

> Department: And after this session, did [P.B.] express to you disappointment after this?
>
> Backs: In the very next session P.B. was very depressed.
>
> Department: And why is that?
>
> Backs: Well, her mother, who had sat there just the week before saying that she was clean, the urinalysis --
>
> Thompson (Connie's attorney): Objection, Your Honor.
>
> Backs: – came back and --
>
> The Court: Just a minute.
>
> Backs: Uh-huh.
>
> Thompson: It calls for an opinion that's outside the scope of this expert's expertise and also calls for a hearsay response based upon something told to the child, the patient. And that's basically our objection.
>
> The Court: All right. I' [sic] going to allow her to testify as to why the child was disappointed. Ladies and gentlemen, you'll disregard this question and answer for any purposes other than the question of why the child was disappointed. You may go ahead and answer.
>
> Backs: She reported that her mother's --
>
> The Court: I said disregard. Don't consider it for any other purpose other than that. Go ahead.
>
> Backs: – her mother's UA was dirty --

11

Thompson: Objection, Your Honor.

Backs: – and this --

Thompson I think that is outside the scope of the witness' [sic] qualifications.

The Court: Ms. Brown (attorney for the Department).

Department: Your Honor, this is what the child's statement was to her then-existing emotional state. It's what the child and what she stated to her as a cause for her depression.

The Court: I'm going to overrule the objection.

Thompson: Thank you, Your Honor.

The Court: Go ahead.

Backs: She reported that her mother's urinalysis was dirty and that this had ruined her birthday party. Apparently she was to go home and celebrate her birthday with her mother and because of the drug screen coming back, that she was unable to, and she was very angry, very hurt.

Connie claims "[t]he effect of the Court's ruling was to allow the witness to use unsubstantiated hearsay and opinion evidence to prove to the jury that [Connie] had failed urinalysis tests on her for drugs." We disagree. First, it is clear from the context of her testimony that Backs was not called to testify as, nor did she ever profess to be, an expert in the field of drug screening. She was only qualified to testify, and did testify, about her treatment of P.B. and what she believed was in P.B.'s best interest. Thus, Connie's 702 objection to Backs's testimony was misplaced. Second, it is apparent that Backs's testimony was not offered to prove the truth of the matter asserted–that Connie tested positive for drugs--but rather to establish what effect Connie's positive drug test had on P.B. *See* Tex. R. Evid. 801(d). Connie's sixth point of error is overruled.

12

In her seventh point of error, Connie alleges the trial court erred "in overruling [her] objections to the testimony of Charles Parks under Tex. R. Evid. 703 and 403."[8] Charles Parks, who is licensed both as a chemical dependency counselor and a marriage and family therapist, was asked by the Department to evaluate and provide services to Connie during the Department's attempts at family reunification. Connie advances no controlling authority or analysis to explain how Rule 703 renders Parks's testimony inadmissible. Instead, Connie suggests that, in our determination of the validity of the psychological test Parks utilized to form his opinion of her condition, we adopt the guidelines advanced in an article appearing in the April 2001 edition of the Texas Bar Journal.[9] Although articles published in that journal may have some merit for a practitioner, they do not constitute authority for our purposes. We, thus, consider this point utilizing the law related to the reliability element discussed above. Parks testified at the gatekeeping hearing that he utilized *inter alia* the Substance Abuse Subtle Screening Inventory (SASSI) to complete his assessment of Connie. Based upon the results of that test, along with his education and training as a chemical dependency counselor, Parks diagnosed Connie with cocaine dependence and suggested she had a negative prognosis. According to Parks, the SASSI was "probably one of the more reliable questionnaires in diagnosing substance dependence" that he had ever

---

[8]Connie appears to use Rules 702 and 703 interchangeably. In fact, we perceive no cogent distinction between Connie's analyses, or lack thereof, under either rule.

[9]Connie refers us to "Zervopoulos, *The Sky is Not Falling*, 64 Tex. Bar J. 4, April 2001, at 350 and *footnote* 43, R.K. Otto, J.F. Edens & E.H. Barkus, *The Use of Psychological Testing in Child Custody Evaluations*, 38 Fam. & Council. Courts. Rev. 312, 333 (2000)."

13

used. The subject matter of Parks's testimony was within the scope of his fields of expertise because he testified to Connie's drug use and the adverse impact drug abuse may have on her children. In short, we conclude the trial court did not abuse its discretion in admitting the testimony of Parks. With respect to Connie's claim under Rule 403, we note she provided no argument or authority to illustrate how the probative value of Parks's testimony was substantially outweighed by the danger of unfair prejudice, confusion, or the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Therefore, Connie presents nothing for our review. *See* Tex. R. App. P. 38.1(h). Her seventh point of error is overruled.

By her fifth, eighth, ninth, and tenth points, Connie claims the trial court erred in admitting the testimony of Ed Basham, Ann Cave, Diane Curtis, and Mark Izzard, in violation of Rule 510. We disagree. As a general rule, communication between a patient and a professional is confidential and shall not be disclosed in civil cases. Tex. R. Evid. 510(a). A patient may, however, waive the right in writing to the privilege of confidentiality of any information. Tex. R. Evid. 510(d)(2). Our review of the record in this case reveals that Connie signed written waivers during her sessions with Cave, Curtis, and Izzard; thus waiving her confidentiality privilege with respect to those professionals. Connie's points of error eight and ten are overruled.

Regarding the testimony of Ed Basham, we note that the exceptions to the medical and mental health privileges apply when: (1) the records sought to be discovered are

14

relevant to the condition at issue, and (2) the condition is relied upon as a part of a party's claim or defense, meaning that the condition itself is a fact that carries some legal significance. R.K. v. Ramirez, 887 S.W.2d 836, 843 (Tex. 1994). In this case, one of the grounds advanced by the Department to support its request for termination of Connie's parental rights was that Connie "knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger[ed] the physical or emotional well-being of the children." In that regard, Basham testified that his evaluation of Connie "raise[d] a serious doubt that she would do an adequate job as a parent in an emotional sense with children." Basham went further to explain that he had a "guarded prognosis" for Connie and "was skeptical that there was going to be much improvement or success as a result of working with her." Clearly, Basham's records/testimony were relevant to a condition at issue–Connie's knowing placement of the children in conditions which endangered their physical or emotional well-being. Furthermore, that condition was relied upon by the Department as one of its grounds for termination. Therefore, Basham's testimony was admissible under the exception to the mental health privilege provided by Rule 510(d)(5). Connie's fifth point is overruled.

Connie's final challenge under her ninth point of error is that the testimony of Diane Curtis was inadmissible under Rule 512. We disagree. Under that provision, a claim of privilege is not defeated by a disclosure which was (1) compelled erroneously or (2) made without opportunity to claim the privilege. Connie presented no evidence at the trial court level, and has provided none on appeal, establishing that Curtis compelled her to sign a

15

confidentiality waiver, or that she provided the waiver to Curtis before being given the opportunity to claim her privilege. Thus, the trial court did not abuse its discretion in allowing Curtis to testify in spite of Connie's objection on this basis. Connie's ninth point of error is overruled.

By her eleventh and final point of error, Connie contends "the trial court erred in sustaining [the Department's] objection to [her] questions about the rules of the Department because this unfairly limited [her] right to cross-examine the caseworker, Marvelle Collins." Specifically, Connie claims the trial court should have allowed her to cross-examine Collins regarding the Department regulations set forth in the Texas Administrative Code. We disagree.

After cross-examining Collins about her familiarity with the "rules and regulations of Child Protective Services," for eight pages in volume five of the record, Connie requested the court take judicial notice of a section of the Texas Administrative Code pertaining to the Department's operations. The trial court granted her request. Then, when Connie attempted to show Collins an excerpt of the Code section and to question her from it, the Department objected to any further testimony on the basis that Collins earlier testified she had "no knowledge about this particular section or how it relate[d] to the Department." The trial court sustained the Department's objection, thus, according to Connie, violating the edicts of Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Initially, we notice that error may not be predicated upon a ruling which admits or excludes evidence

16

unless a substantial right is affected, and (1) an objection is properly made, and (2) in case the ruling is one excluding evidence, the substance was made known to the court by offer, or was apparent from the context within which the questions were asked. Tex. R. Evid. 103(a). While the reviewing court may be able to discern from the record the nature of the evidence and the propriety of the trial court's ruling, without an offer of proof, we can never determine whether exclusion of the evidence was harmful. Perez v. Lopez, 74 S.W.3d 60, 66 (Tex.App–El Paso 2002, no pet.). Here, we note, apart from commenting that "[t]he last fifteen minutes of [her] cross examination are based on that very code section right there," Connie did not provide the trial court, nor has she favored this Court, with the additional questions she would have asked of Collins had the Court allowed her to continue the line of questioning. Thus, Connie's eleventh point presents nothing for our review, and is, thus, overruled.

Accordingly, the judgment of the trial court is affirmed.

Per Curiam

17