**Opinion issued January 10, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00211-CV

————————————

**DENIA MUELLER, Appellant**

**V.**

**JOHN MICHAEL BRAN, Appellee**

On Appeal from the 309th District Court
Harris County, Texas
Trial Court Case No. 2007-50969

## MEMORANDUM OPINION

Appellant, Denia Mueller, challenges the trial court's order entered after a jury trial, appointing appellee, John Michael Bran, sole managing conservator and Mueller possessory conservator of their child. In three issues, Mueller contends

that the trial court erred in holding that anonymous telephone calls made to a juror regarding a "survey" about child abuse did not constitute sufficient evidence of jury contamination to declare a mistrial, allowing Bran's expert witness to testify, and conducting voir dire without providing her the assistance of a Spanish language interpreter.

We affirm.

## Background

In August 2009, Mueller brought a Suit Affecting Parent Child Relationship ("SAPCR") against Bran concerning their minor child, and the trial court appointed them joint managing conservators of the child, giving Mueller the exclusive right to determine the child's residency.

Subsequently, Bran filed the instant suit, seeking a temporary restraining order. Virginia Smith, the child's paternal grandmother, intervened in the case, and the trial court placed the child with her temporarily. The case was tried to a jury, which returned a verdict in favor of changing the conservatorship of the child to Bran as sole managing conservator with the exclusive right to determine the child's residence and Mueller as possessory conservator of the child.

The trial court then entered its Order in Suit to Modify the Parent-Child Relationship, appointing Bran as sole managing conservator and granting Mueller

2

supervised visitation with the child. Mueller then filed a motion for new trial, which the trial court denied.

## Jury Contamination

In her first issue, Mueller argues that the trial court erred in not declaring a mistrial and empaneling a new jury because the jury was "contaminated." Mueller complains that a juror received two recorded telephone messages asking her to participate in a "survey" concerning child abuse. We note that jury misconduct includes outside influence on jurors. *See Losier v. Ravi*, 362 S.W.3d 639, 646 (Tex. App.–Houston [14th Dist.] 2009, no pet.).

After the juror alerted the court that she had received the telephone messages, the trial court held a brief hearing and questioned her about the messages. *See* TEX. R. CIV. P. 327(b) (allowing juror testimony regarding outside influence). The juror testified that she received the initial recorded message on her cellular telephone stating that the caller was conducting a survey and asking if she had been in contact with or knew anyone that could have suffered from child abuse. The juror explained that she immediately stopped listening to the message. She received a second message from the same telephone number the next day at lunchtime. The juror listened to only the first few words of the recording, which was long enough to determine that it was a repeat of the first message. Neither recording referred to the case or mentioned the parties, and the juror noted that the

3

messages would not influence her decision in this case. The juror explained that she had asked the other jurors if they had received any similar calls. Another juror then testified that she had received a call on her cellular telephone that came from the same area code as the calls placed to the first juror, but not the same number, and the caller did not leave a message. The court concluded the hearing, noting that it was "not worried about what [it] heard."

Mueller made no objection during the hearing, did not ask the trial court to declare a mistrial based on jury misconduct, and did not raise the issue of jury misconduct in her motion for new trial. A complaint for jury misconduct must be raised in a motion for new trial. *See* TEX. R. CIV. P. 324(b). Because Mueller did not preserve error regarding her complaint of jury misconduct, we hold that she has waived the issue on appeal. *See id*.; *Dunn v. Houston Lighting & Power Co*., No. 01-99-00595-CV, 2001 WL 996082 at *2 n.2 (Tex. App.—Houston [1st Dist.] Aug. 30, 2001, pet. denied) (not designated for publication) (alleged error for jury misconduct waived on appeal when not raised in motion for new trial and amended motion was untimely filed).

We overrule Mueller's first issue.

### Expert Testimony

In her second issue, Mueller argues that the trial court erred in allowing the expert testimony of psychologist Daphne Johnson because Bran did not qualify her

4

as an expert. *See* TEX. R. EVID. 702. Mueller objected to Johnson's testimony on the ground that she was "[n]ot competent to testify, Judge, not qualified."

We will not disturb a trial court's determination that a witness is or is not qualified as an expert unless an abuse of discretion is shown. *See Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718–19 (Tex. 1998). Consequently, we may not conclude that the trial court has abused its discretion simply because, in the same circumstances, we would have ruled differently, or if the trial court committed a mere error in judgment. *Hernandez v. State*, 53 S.W.3d 742, 750 (Tex. App.—Houston [1st Dist.] 2001, no pet). Instead, we gauge an abuse of discretion by determining whether the trial court acted without reference to any guiding rules or principles. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). Thus, a trial court enjoys wide latitude in determining whether expert testimony is admissible. *Hernandez*, 53 S.W.3d at 750.

At the outset, we note that, on appeal, Mueller suggests that Johnson's testimony was not relevant and she questions Johnson's "scientific methodology." To the extent that Mueller attempts to raise these issues in her briefing to this Court, we note that she waived them because she made no such objections at trial, nor did she move to strike any of Johnson's testimony. *See Guadalupe–Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 807 (Tex. 2002) (stating that to preserve

complaint regarding unreliability of expert's testimony, party must have objected to testimony on that basis before trial or when testimony was offered). In order to preserve a complaint for appellate review, the complaining party must make a timely objection, request, or motion with sufficient specificity and obtain a ruling on the objection, request, or motion. TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(1). A specific objection enables a trial court to understand the precise complaint and make an informed ruling and it affords the offering party an opportunity to remedy the defect, if possible. *McKinney v. Nat'l Union Fire Ins. Co.*, 772 S.W.2d 72, 74 (Tex. 1989). And any complaint made on appeal must comport with the objection made before the trial court. *Religious of Sacred Heart of Tex. v. City of Houston*, 836 S.W.2d 606, 614 (Tex. 1992).

In regard to Mueller's argument that Bran did not qualify Johnson to testify as an expert, we note that the party calling the expert witness must show that the witness is qualified by having "knowledge, skill, experience, training, or education" to testify on the specific issue that is before the court. *See* TEX. R. EVID. 702*; Gammill*, 972 S.W.2d at 718. Under rule 702, expert testimony is allowed if it would assist the trier of fact in understanding the evidence or determining a fact issue. *Gammill*, 972 S.W.2d at 718. Whether an expert is qualified under rule 702 is a preliminary matter that is to be determined by the trial court. *See id.* The trial court must "ensur[e] that those who purport to be experts

6

truly have expertise concerning the actual subject about which they are offering an opinion." *Id*. at 719 (quoting *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996)). "General experience in a specialized field is insufficient to qualify a witness as an expert*." General Motors Corp. v. Burry*, 203 S.W.3d 514, 526 (Tex. App.—Fort Worth 2006, pet. denied). Testimony from an expert who is not qualified to offer a particular opinion in a case is not admissible because it does not rise above mere speculation, and thus, does not offer genuine assistance to the jury. *Broders*, 924 S.W.2d at 150-54 (Tex. 1996).

Here, Johnson testified that she has a master's degree in counseling and is a licensed professional counselor. To become a licensed professional counselor, she had to perform an internship and pass a National Counselor's Exam. Johnson is a supervisor and trains other counselors and therapists. She is also a "certified expert" through Newsom Psychological, which provides therapeutic services for people working with Child Protective Services ("CPS"). Johnson is also certified by CPS as an expert witness regarding children's issues, and she has been for seven years a certified anger management therapist and anger management trainer, which authorizes her to train other therapists on how to provide anger management services.

Johnson further testified that she has 15 years experience as a foster parent and as a licensed childcare administrator. She is a certified special education

7

teacher and has worked for the Houston Independent School District, the Lamar Consolidated School District, and at the Harris County Juvenile Probation in the Juvenile Justice Alternative Education program as a special education teacher. As a special education teacher, Johnson has worked with children with mental and physical disabilities and with those who are emotionally disturbed. In her private counseling practice, "Wise Counseling," Johnson has provided therapy services to hundreds of children. And she has seen child abuse and is familiar with it. Johnson has worked with several children who have been abused, and she has regularly reported the abuse of "quite a few," but "less than a hundred," children to CPS.

Johnson further explained that she provided therapeutic counseling, consisting of approximately 30 sessions, for the child in this case beginning in February 2011 up to the time of the trial in September 2011. Johnson noted that when the child started her therapy sessions, her head had been shaved by Mueller. Johnson opined that Mueller's act of shaving the child's head constituted child abuse because most young girls are attached to and defined by their hair. Johnson explained that to shave all the hair from a young girl's head would be punitive, i.e., used "as a form of punishment or some sort of retaliation for something" and was "excessive and abusive." Johnson further opined that shaving a child's head as did

Mueller is degrading and humiliating, and may cause permanent psychological damage without therapeutic intervention.

During her therapy, the child told Johnson that Mueller had also made her eat her own feces when she had a bathroom accident. Johnson concluded that this constituted child abuse as well. Johnson explained that the child went into detail when she told Johnson what had happened and was very concerned about not having another bathroom accident. Johnson opined that a parent who would do this to her child was not qualified to be a parent or to have unsupervised visitation with the child. Johnson noted that when Mueller made the child eat feces, she had actually committed "family violence," and that many of the things that Mueller did to punish the child were "abusive" and "excessive."

Johnson highlighted another incident in which the child tried to take her clothes off when she climbed into bed with her stepmother. The child learned this behavior from Mueller, and Johnson opined that it made Mueller an unfit parent. Johnson also opined that Mueller's action in putting the child in an unlit closet with the door closed for long periods of time as a punishment constituted child abuse.

Finally, based only on her exposure to the child through the therapy sessions, Johnson opined that the child would be best served by being placed with Bran who would meet the physical and emotional needs of the child. And Johnson

9

opined that Virginia Smith, the child's grandmother, would also meet the child's physical and emotional needs. Johnson concluded that Mueller was not qualified to meet the child's physical and emotional needs and Mueller had not provided the child with a stable home. Johnson explained that Bran had provided the child with a very stable home environment. She noted that Bran and his wife and his mother work together and are supportive of the child. And Bran, his wife, and his mother all have good parenting skills, which Mueller does not possess. Johnson opined that Bran should have custody of the child.

As is evident from the record, Johnson's testimony was not of a scientific or technical nature. Rather, Johnson's opinions were based on her observations during her approximately 30 sessions with the child. Johnson's testimony was also based on her years of experience and training as a licensed professional counselor and having provided therapy to children and parents.

Johnson has extensive training and experience working with CPS and parents and children utilizing CPS services. And she has provided therapy to hundreds of children during her seven years as a licensed professional counselor. Based on Johnson's education, training, and experience counseling parents and children similarly situated to the child in this case, as well as her 30 therapy sessions with the child, we hold that the trial court acted within its discretion in

concluding that Johnson is an expert with specialized knowledge and was qualified to render her opinions in this case. *See* TEX. R. EVID. 702.

We overrule Mueller's second issue.

**Voir Dire**

In her third issue, Mueller argues that the trial court violated her due process rights under the Fourteenth Amendment by conducting voir dire without providing her the assistance of a Spanish language interpreter. Mueller asserts that she needed an interpreter to "assist her in the trial of the case" and she was deprived of an opportunity to "meaningfully participate in the jury selection process."

Our review of the record reveals that Mueller failed to indicate to the trial court in any manner, whether by objection, motion for continuance, motion to dismiss the panel, or otherwise, that she believed that her rights were being violated. Mueller makes no citation to the record indicating otherwise. In fact, the record reveals that before voir dire began, the trial court and the attorneys were aware that the interpreter who normally worked in the court was absent and a substitute had stopped by and would later return. At that time, Mueller's attorney provided interpretation so that two Spanish-speaking witnesses could be sworn and excused from the courtroom. Mueller's counsel made no objection to the absence of the interpreter and did not ask the trial court to wait until the substitute

11

interpreter could be brought back to the courtroom. Thus, Mueller has failed to preserve her complaint for appellate review. *See* TEX. R. APP. P. 33.1

We also note that despite Mueller's assertions that she was deprived of due process and the opportunity to participate in the jury selection process, the record does not reflect that the complained of action probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). Mueller was represented by counsel at trial, and he actively participated in questioning potential jurors and exercised Mueller's right to strike certain potential jurors that he found objectionable.

We overrule Mueller's third issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley and Sharp.