

# NUMBER 13-19-00210-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

AEP TEXAS INC.,                                                        Appellant,

v.

WORLD BUSINESS LENDERS, LLC,
DUFOUR LOGISTICS, LLC, AND
INDUSTRIAL STEEL PRODUCTS, LLC,                        Appellees.

### On appeal from the County Court at Law No. 4 of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva
Memorandum Opinion by Justice Hinojosa**

Appellant AEP Texas Inc. (AEP) filed a condemnation suit against appellees World

Business Lenders, LLC (World Business Lenders); Dufour Logistics, LLC (Dufour); and

Industrial Steel Products, LLC (Industrial Steel). AEP appeals a judgment, following a jury

trial, awarding appellees $493,499 for the condemned property. By two issues which we construe as one, AEP contends the trial court abused its discretion when it failed to exclude an unreliable expert witness opinion which led to an improper market value award. We reverse and remand.

## I.  BACKGROUND

AEP is a privately-owned public electric utility company with eminent domain authority. *See* TEX. UTIL. CODE ANN. § 181.004. According to the pleadings, AEP determined that it needed to expand its La Palma Substation in San Benito, Texas to further develop its ability to supply electricity in the Rio Grande Valley. AEP filed a condemnation suit against appellees to acquire a 12.292-acre tract of land (the Condemned Property) that was part of a larger 54.934-acre parent tract. World Business Lenders owned the Condemned Property in fee simple, while Dufour and Industrial Steel claimed an interest in the property as lienholders.

The trial court appointed special commissioners who awarded $208,000.00 as damages for the taking. *See* TEX. PROP. CODE ANN. §§ 21.014–.016. AEP deposited this full amount into the registry of the court. *See id*. § 21.021. Appellees then filed objections to the commissioners' findings regarding the total market value award of the Condemned Property. *See id*. § 21.018. Upon appellees' motion, the trial court allowed appellees to withdraw their deposit while the case proceeded. The parties agreed to limit the trial issue to the determination of market value for the Condemned Property. Each party retained an expert to opine on the market value of the Condemned Property: AEP retained Leonel Garza, III while appellees retained Arturo Palacios.

2

## A.      The Pre-Trial Hearing

On the day of trial, AEP and appellees each filed a motion to exclude the other party's expert. The trial court heard the motions in a hearing outside the presence of the jury.

AEP argued to the court that Palacios's report should not be admitted because the three comparable properties Palacios used to make his estimation were not similar to the Condemned Property, thus making his testimony and report unreliable. First, AEP argued that Palacios's three comparable properties were in a flood zone while the Condemned Property was not. AEP pointed out that, to account for the difference in flood zones, Palacios made "Site" adjustments and increased the price of the first comparable property by $311,040.79, the second property by $228,503.79, and the third by $42,875.79. Second, AEP noted that the Condemned Property's highest and best use was listed as commercial and/or industrial, while the comparable properties' best use was deemed agricultural. Third, Palacios testified that the Condemned Property was unique in that it had been elevated ten to eleven feet. To account for this difference in topography and elevation, Palacios made "the same $3.293 million adjustment to each Comparable Sales property to make them similar." AEP argued that this "Site Improvement" adjustment "increased Comparable Sale #1's price by 3,136%, Comparable Sale #2's sale price by 1,756%, and Comparable Sale #3's sales price by 882%, respectively."

The trial court denied each party's motion to exclude,[1] and the case proceeded to a jury trial.

---

[1] Because the motion to exclude Garza's report or testimony is not at issue in the appeal, we do not recite these arguments. *See* TEX. R. APP. P. 47.1.

3

**B.      Trial**

Palacios testified over AEP's objections, reiterating much of the testimony he had shared during the pretrial hearing. Palacios explained to the jury that he employed a sales comparison approach to determine the fair market value of the Condemned Property. He based his opinion on the sales of three comparable properties in San Benito. He stated that, in his opinion, it was important for his evaluation to stay within the San Benito market. He explained that the Condemned Property was 12.42 acres and that its highest and best use was commercial. The first comparable property he found was twenty acres, located approximately 2.39 miles away from the Condemned Property, and its highest and best use was agricultural. This property sold for $105,000 on August 3, 2018. His second comparable property was 51.42 acres, located 3.44 miles away, was deemed agricultural for its highest and best use, and sold for $187,537 on March 21, 2018. The third and final comparable sale was 6.634 acres, located 1.52 miles from the Condemned Property; its highest and best use was agricultural, and it sold for $373,165 on March 21, 2018.

Palacios expounded on the fact that the Condemned Property was a unique property because it had been deliberately elevated about ten to eleven feet. In his report, Palacios opined that

> The subject property has the highest elevation within the entire City of San Benito. The elevation is the best[-]selling point of the subject property. The elevation of the subject property was man made. The various groups of engineers which included environmental, sewage, drainage, storm management, erosion, control, surveyors, and several others made the subject property the highest elevated property within the City of San Benito, Texas.

4

Palacios acknowledged in his report that, "in order to make each of the comparable sales 'similar' to the subject property, each of the comparable sales needed to be raised to the elevation of the subject property." He made the "Site" adjustments to each comparable sale to account for flood zone differences and the $3.3 million blanket "Site Improvement" adjustments to account for the elevation difference. After making his adjustments, Palacios concluded that the Condemned Property was valued at $868,940.

Garza, on the other hand, testified during trial that the Condemned Property was worth $193,288. To make his report, he used one comparable property in San Benito and two properties in the neighboring market of Harlingen, Texas. The properties were similar in topography and elevation. The first comparable property in San Benito had its highest and best use as "commercial/general retail" while the Harlingen properties were deemed "light industrial."

After the jury deliberated, it awarded appellees $493,499 for the Condemned Property. AEP filed a motion for new trial and motion to modify the judgment. The trial court granted the motion to modify because the original judgment failed to grant AEP title and did not account for appellees' previously withdrawn award from the registry of the court. The motion for new trial was overruled by operation of law. AEP appeals.

## II. STANDARD OF REVIEW & APPLICABLE LAW

### A. Expert Opinion Testimony

Expert testimony must be relevant and reliable under Texas Rule of Evidence 702. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998); TEX. R. EVID. 702. This includes the testimony of expert appraisal witnesses in condemnation actions.

*Guadalupe-Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 807 (Tex. 2002). "Appraisal expertise is a form of 'specialized knowledge [used to] assist the trier of fact to . . . determine a fact in issue.'" *Id*. (referring to TEX. R. EVID. 702). It is the trial court's responsibility to make the preliminary determination of whether the proffered testimony meets the standards of relevance and reliability. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995); *see* TEX. R. CIV. P. 104(a) (stating that the trial court is to decide preliminary questions concerning the admissibility of evidence). "[R]eliability is an issue of admissibility for the trial court, not a weight-of-the-evidence issue for the fact finder." *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 95–96 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

In the context of appraisals, a court is not required to rely on an adjustment when the expert does not sufficiently show the adjustment's application to the property at issue. *See Royce Homes, L.P. v. Humphrey*, 244 S.W.3d 570, 579 (Tex. App.—Beaumont 2008, pet. denied) (concluding an expert's testimony was unreliable because his testimony did not sufficiently explain why the percentage adjustment made was justified). An expert's failure to provide data without a supporting basis makes their opinion unreliable. *See id.* Expert testimony is unreliable if "there is simply too great an analytical gap between the data [relied upon] and the opinion proffered." *Hous. Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 835 (Tex. 2014) (citing *Gammill*, 972 S.W.2d at 726). An expert must "connect the data relied on and his or her opinion" and "show how that data is valid support for the opinion reached." *Id*.; *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 906 (Tex. 2005); *Gammill*, 972 S.W.2d at 726. Courts are not

required "to ignore fatal gaps in an expert's analysis or assertions that are simply incorrect." *Volkswagen*, 159 S.W.3d at 912. "A flaw in the expert's reasoning from the data may render reliance on a study unreasonable and render the inferences drawn therefrom dubious." *Mel Acres Ranch*, 443 S.W.3d at 835. "Under that circumstance, the expert's scientific testimony is unreliable and, legally, no evidence." *Id*.

Once a party objects to proffered expert testimony, the proponent of the testimony bears the burden of demonstrating its admissibility. *Robinson*, 923 S.W.2d at 557; *Kraft*, 77 S.W.3d at 807. An appellate court reviews a trial court's decision to admit or exclude expert appraisal testimony for an abuse of discretion. *Enbridge Pipelines (E. Tex.) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 262 (Tex. 2012). A trial court abuses its discretion when it rules without reference to any guiding rule or principles or acts arbitrarily and unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1986).

## B.     Appraisals & Market Value

"Both the United States and Texas Constitutions require governments to compensate landowners for takings of their property for public use." *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001) (citing U.S. CONST. amend. V; TEX. CONST. art. 1, § 17). "[T]he normal measure of damages is the land's market value." *Id*. (citing TEX. PROP. CODE ANN. § 21.042(b)). "Thus, the central damage issue in the typical condemnation case is how to measure the market value of the condemned property." *Id*.

"The three traditional approaches to determining market value are the comparable sales method, the cost method, and the income method." *Sharboneau*, 48 S.W.3d at 182;

7

*Religious of the Sacred Heart v. City of Hous.,* 836 S.W.2d 606, 615–17 & n. 14 (Tex. 1992). Texas courts favor the comparable sales method. *See Sharboneau*, 48 S.W.3d at 182. "If the goal of an appraisal is to ascertain market value, then logically there can be no better guide than the prices that willing buyers and sellers actually negotiate in the relevant market." *Id*. Under this type of analysis, an appraiser finds information for sales of similar types of property, then makes upward or downward adjustments to these sales prices based on differences in the subject property. *Id*.

Comparable sales must be voluntary sales from a willing buyer to a willing seller, occur near the time of the condemnation, be in the vicinity of the condemned property, and include properties with similar characteristics. *Id.*; *see also U.S. v. 33.90 Acres of Land*, 709 F.2d 1012, 1014 (5th Cir. 1983). "Comparable sales need not be in the immediate vicinity of the subject land, so long as they meet the test of similarity." *Sharboneau*, 48 S.W.3d at 182. When forming an expert opinion, the "underlying data should be independently evaluated in determining if the opinion itself is reliable." *Kraft*, 77 S.W.3d at 808 (citing *Merrell Dow Pharm. v. Havner*, 953 S.W.2d 706, 713 (Tex. 2005)). If, however, the properties are so different that the appraiser and the fact-finder cannot make valid adjustments for these differences, then a court should refuse to admit the sales as comparable. *See Kraft*, 77 S.W.3d at 808 ("The comparable sales method fails when the comparison is made to sales that are not, in fact, comparable to the land condemned."); *Sharboneau*, 48 S.W.3d at 182.

### III. ANALYSIS

On appeal, AEP claims that "by failing to use properties that were similar to the

8

Entire Tract, Palacios misapplied the comparable sales method and the trial court should have excluded his testimony." AEP argues that Palacios's three comparable sales were so dissimilar that they should not have been used as comparable properties. *See Kraft*, 77 S.W.3d at 808; *Sharboneau*, 48 S.W.3d at 182. AEP first notes that the Condemned Property was not in a flood zone while all three comparable properties were in a flood plain. AEP also notes that the Condemned Property's highest and best use was commercial/industrial while the comparable properties' best use was agricultural. *See Sharboneau*, 48 S.W.3d at 182. AEP further argues that the blanket "Site Improvement" adjustment Palacios made to each comparable property made his testimony unreliable. We focus our legal analysis on this claim. In his report, Palacios added $3.293 million to his estimated value of each of the three comparable sales properties to account for the difference in the respective properties' topography and elevation.

During the pre-trial hearing on the motion to exclude the expert's testimony, Palacios explained as follows:

Q. [AEP's Counsel]. The subject property is so dissimilar to the comparable sales that you used that, in order to make them similar, you had to make adjustments to the tune of adding $3.3 million for the site aggregate to each of the comparable sales, correct?

A. Yes.

. . . .

Q. And so you would agree with me without making those—you would agree with me that those are significant adjustments, correct?

A. Yes.

9

Q.          And so significant—well, you did roughly say $3.3 million—roughly 3.3 million figure in your appraisal report. Do you know what I'm referring to?

A.          Yes, sir.

Q.          Am I right to assume that that $3.3 million represents site aggregate of roughly 10 feet per comparable sale?

A.          Yes, sir.

Q.          Anywhere in your report is there any way that we can verify data that you provided the—how you arrived at that $3.3 million?

A.          No, sir.

Q.          I pass the witness, Your Honor.

REDIRECT EXAMINATION

Q. [Appellees' Counsel]: Why [are calculations] not in your report, Mr. Palacios?

A.          The reason it's not in the report is in my report as we—as [you] stated earlier about the different types of reports, before there used to be a self-contained summary and restricted appraisal report. Now what they did is they just now did an appraisal report and a restricted appraisal report. Within the appraisal report, USPAP tells us that we can go ahead and add additional information as to what type of a report that we are going to do. And I include in my appraisal report I state that this is a summary appraisal report. So I don't have to include all of my calculations in there. All my calculations are part of my work file, and so that's why they are not in the appraisal report itself.

In other words, Palacios provided a summary report that did not include the calculations or methods he used to derive the $3.3 million adjustment across the board. AEP notes that this adjustment increased the first comparable property's price by 3,136%,

10

the second property's sale price by 1,756%, and the third property's sales price by 882%. AEP also pointed out to the trial court that it never received Palacios's work file during discovery, so they were unable to properly cross-examine him on this significant adjustment.

The trial court, as gatekeeper, should have excluded Palacios's expert opinion because it provided no data or calculations to explain why a difference in topography or elevation would merit a blanket multi-million dollar increase across all three comparable properties. *See* TEX. R. CIV. P. 104(a); *Robinson*, 923 S.W.2d at 556. Here, there was "simply too great an analytical gap between the data [relied upon] and the opinion proffered" by Palacios. *See Mel Acres Ranch*, 443 S.W.3d at 835; *Gammill*, 972 S.W.2d at 726. The trial court did not have any "underlying data" it could independently review to determine if Palacios's significant "Site Improvement" adjustment for elevation was reliable. *See Kraft*, 77 S.W.3d at 808; *Havner*, 953 S.W.2d at 713. Palacios's testimony regarding his appraisal and review of the Condemned Property and comparable properties, as well as his general appraisal experience, did not adequately explain this blanket $3.3 million adjustment. Thus, Palacios's appraisal testimony was unreliable. *See Kraft*, 77 S.W.3d at 808.

When a trial court erroneously admits evidence that should have been excluded, appellate courts apply a harmless error review to determine if the error warrants reversal. *See* TEX. R. APP. P. 44.1(a)(1). Erroneously admitted evidence is harmful if the error "probably caused the rendition of an improper judgment." *See id*. Here, given the fact that the jury found the Condemned Property's market value to be $493,499, a value roughly

11

halfway between Palacios's appraisal of $868,940 and Garza's appraisal of $193,288, it is apparent that the jury relied on Palacios's unreliable report when calculating its award. Accordingly, we conclude AEP was harmed. *See id.*

We conclude the trial court abused its discretion when it deemed Palacios's report reliable and admitted his testimony and report into evidence when there was no underlying data to support the $3.3 million adjustment. *See Enbridge Pipelines*, 386 S.W.3d at 262; *Royce Homes*, 244 S.W.3d at 579. The trial court, as gatekeeper, should have excluded this report. *See Enbridge Pipelines*, 386 S.W.3d at 262. We sustain AEP's issue.

## IV. CONCLUSION

We reverse the trial court's judgment and remand for a new trial and any further proceedings in accordance with our opinion.

LETICIA HINOJOSA
Justice

Delivered and filed on the
26th day of February, 2021.