RODGERS V. COMMISSION FOR LAWYER DISCIPLINE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-072-CV

CLIFFORD B. RODGERS APPELLANT

V.

THE COMMISSION FOR APPELLEE

LAWYER DISCIPLINE 

------------

FROM THE 153RD 
DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

This is an appeal from a jury verdict finding that appellant Clifford B. Rodgers violated the State Bar of Texas rules of professional conduct regarding trade name usage, false or misleading advertising, required advertising disclosures, and filing of advertising with the State Bar.  
See
 
Tex. Disciplinary R. Prof’l Conduct
 7.01(a), (e), 7.02(a), 7.04(b), (j), 7.07(b), 
reprinted in
 
Tex. Gov’t Code Ann.,
 tit. 2, subtit. G app. A (Vernon 1998) (
Tex. State Bar R
. art. X, § 9).  After a jury found that Rodgers violated all of these rules, the trial court determined that Rodgers should receive a two-year, fully probated suspension of his law license.  

In six issues on appeal, Rodgers contends that (1 & 2) the evidence is legally and factually insufficient to support the jury’s findings that he violated the trade name and false or misleading advertising rules, (3) as a matter of law he did not violate the disclosure rule, (4) as a matter of law he did not violate the filing of advertising rule because the advertisement was either exempt from the filing requirement or because appellee the Commission for Lawyer Discipline (CLD) did not conclusively prove that it was not exempt, (5) the trial court abused its discretion in admitting the testimony of CLD’s expert, and (6) the trial court abused its discretion in assessing Rodgers’s punishment.  Because we determine that the evidence is sufficient to prove that Rodgers violated the trade name and false or misleading advertising rules, that the jury’s verdict regarding whether he violated the disclosure rule controls, that the advertisement was not exempt from the filing rule and CLD did not have the burden to prove it was, and that the trial court did not abuse its discretion in admitting the expert testimony of Lynette Fons or setting punishment, we affirm the trial court’s judgment. 

Background Facts

In 1994 Rodgers began running an advertisement in the Southwestern Bell Yellow Pages under the name “Accidental Injury Hotline.”  The advertisement was located in the “Attorney Referral & Information Serv” section of the book.  The advertisement did not list Rodgers’s or any other attorney’s name, nor did it make any other disclosures required by the rules.  
See
 
Tex. Disciplinary R. Prof’l Conduct
 7.04.  It did contain a telephone number and list of topics regarding what to do in case of accident or injury.

After pressing the code number next to one of the topic listings, the caller was directed to a prerecorded message advising the caller about that specific topic.  At the end of each prerecorded message, the caller was prompted as follows:  “To arrange a free, no obligation consultation about your case with an attorney, now press ‘0‘.”  If the caller pressed 0, the call was forwarded to Rodgers’s office, with the following recording:

Your call is being forwarded to the Fort Worth office of attorney Clifford Rodgers, the sponsor of the Accidental Injury Hotline, which is copyrighted 1994 by him.  

He is licensed to practice law by the Texas Supreme Court and is not certified by the Texas Board of Legal Specialization.

This is an advertisement.

If the call took place after office hours, the caller was prompted to either press the “*” key for emergency matters or to leave a message. 

Rodgers subsequently received a letter from the State Bar dated August 15, 1994, which indicated that the Bar had initiated a grievance committee complaint against Rodgers about the advertisement.  The letter indicated that the advertisement was “alleged to be in violation of [former] Rule 7.04 Texas Disciplinary Rules of Professional Conduct, in that said rule forbids attorneys from practicing under a trade name or a name that is misleading as to the identity of the lawyer or lawyers practicing under that name.”  
See
 former 
Tex. Disciplinary R. Prof’l Conduct
 7.04, 777-778 S.W.2d (Tex. Cases) CXV (1990, superseded 1995) (current version at 
Tex. Disciplinary R. Prof’l Conduct
 7.01(a)).  Rodgers later received a letter indicating that an investigatory panel of the grievance committee found that he had not committed professional misconduct and that the matter had been dismissed.  However, the letter also warned that “the complainant has the right to amend the complaint and refile with new information.”   

In 1995, new rules of professional disciplinary conduct regulating attorney advertising became effective.  892-893 S.W.2d (Tex. Cases) XXXIII (1995) (providing that rules would become effective 120 days after judgment in 
Texans Against Censorship
); 
see Texans Against Censorship, Inc. v. State Bar of Tex.
, 888 F. Supp. 1328 (E.D. Tex. 1995) (judgment date March 31, 1995).  The new rules imposed additional regulations on attorney advertising, including, among other things, prohibiting an attorney from advertising under a trade name and requiring all attorney advertising—with certain enumerated exceptions—to be filed with an advertising review committee of the State Bar.  
See
 
Tex. Disciplinary R. Prof’l Conduct
 7.01(e), 7.07.  Rodgers was aware of the new rules and continued to run his advertisements.  He did not send copies to the review committee for approval.

In 1997, a few days before the deadline for approving copy for the upcoming publication of the Southwestern Bell Yellow Pages, Rodgers was contacted by a representative of Southwestern Bell, who told Rodgers that—based on its communications with the Bar—it could no longer run his advertisement under the “Attorney Information Referral Service” heading. 

Rodgers filed suit against the State Bar and Southwestern Bell and obtained a temporary order restraining the Bar from talking to Southwestern Bell and telling it not to run Rodgers’s advertisement and restraining Southwestern Bell from printing the directory without the advertisement in it.  After a hearing, Rodgers and Southwestern Bell entered into a rule 11 agreement to run the advertisement with a disclaimer indicating that the advertisement was not a referral service, but an information service.  
See
 
Tex. R. Civ. P. 
11.  The State Bar was not a party to the rule 11 agreement.  Rodgers then nonsuited the litigation. 

Rodgers subsequently ran the advertisement in the 1997 Southwestern Bell Yellow Pages, GTE Everything Pages, and Transwestern World Pages.  CLD initiated the grievance process against Rodgers in 1998 and filed this suit in November 1999.

Whether the Law of the Case Doctrine Applies

CLD initially contends that Rodgers’s legal insufficiency challenges are barred by the law of the case doctrine.  Another panel of this court has previously decided that CLD brought forward sufficient evidence to survive a no-evidence summary judgment filed by Rodgers during this litigation.  
See Comm’n for Lawyer Discipline v. C.R.
, 54 S.W.3d 506, 518 (Tex. App.—Fort Worth 2001, pet. denied).  CLD argues that because in order to survive a no-evidence summary judgment, the nonmovant must bring forward more than a scintilla of evidence on the challenged issue—and because in order for a jury finding to be legally sufficient there must be more than a scintilla of evidence supporting it—this court’s prior ruling in the no-evidence summary judgment portion of this case controls.  We disagree.

The law of the case doctrine is defined as “that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages.”  
Briscoe v. Goodmark Corp.
, 102 S.W.3d 714, 716 (Tex. 2003) (citing 
Hudson v. Wakefield
, 711 S.W.2d 628, 630 (Tex. 1986)).  The doctrine prohibits relitigation of a question of law unless (1) the earlier holding is clearly erroneous or (2) the later stage of litigation presents different parties, different issues, or more fully developed facts.  
Id
. at 716-17; 
Hudson
, 711 S.W.2d at 630.

Here, the determination of whether more than a scintilla of evidence is shown in the record is being made at two different stages of litigation and may involve more fully developed facts at either stage.  When reviewing a no-evidence summary judgment motion, we may consider only the summary judgment record.  
See Brookshire v. Longhorn Chevrolet Co.
, 788 S.W.2d 209, 213 (Tex. App.—Fort Worth 1990, no writ); 
see also
 
Tex. R. Civ. P.
 166a(i) & cmt.-1997 (providing that trial court must grant motion unless respondent produces “summary judgment evidence” raising a genuine issue of material fact and noting that “[t]he existing rules continue to govern the general requirements of summary judgment practice”).  When reviewing the legal sufficiency of the evidence to support a jury finding, we may review only the evidence introduced at trial.  
See Town of Sunnyvale v. Mayhew, 
905 S.W.2d 234, 258 (Tex. App.—Dallas 1994), 
rev’d on other grounds
, 964 S.W.2d 922 (Tex. 1998), 
cert. denied
, 526 U.S. 1134 (1999); 
Noble Exploration, Inc. v. Nixon Drilling Co.
, 794 S.W.2d 589, 592 (Tex. App.—Austin 1990, no writ).  It is possible that evidence considered at summary judgment may not have been introduced into the record at trial or vice versa.  Thus, we do not believe the law of the case doctrine is applicable here.  We will review the sufficiency of the evidence based on the evidence adduced at trial. 

Legal and Factual Sufficiency of Evidence to Prove Violation of Trade Name and False or Misleading Advertising Rules

Standard of Review

In determining a “no-evidence” issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary.  
Bradford v. Vento, 
48 S.W.3d 749, 754 (Tex. 2001)
; Cont’l Coffee Prods. Co. v. Cazarez, 
937 S.W.2d 444, 450 (Tex. 1996);
 In re King's Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).  Anything more than a scintilla of evidence is legally sufficient to support the finding.  
Cazarez,
 937 S.W.2d at 450;
 Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996).  More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.  
Rocor Int’l, Inc. v. Nat’l Union Fire Ins. Co.
, 77 S.W.3d 253, 262 (Tex. 2002).

A “no-evidence” issue may be sustained only when the record discloses one of the following:  (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez,
 977 S.W.2d 328, 334 (Tex. 1998) (citing Robert W. Calvert, 
“No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)),
 cert. denied
, 526 U.S. 1040 (1999).

An assertion that the evidence is “insufficient” to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

Violation of Trade Name Rule

Rule 7.01(a) provides that “[a] lawyer in private practice shall not practice under a trade name, a name that is misleading as to the identity of the lawyer or lawyers practicing under such name, or a firm name containing names other than those of one or more of the lawyers in the firm.”  
Tex. R. Disciplinary Conduct
 7.01(a).  Rule 7.01(e) provides that “[a] lawyer shall not advertise in the public media or seek professional employment by written communication under a trade or fictitious name.”  
Id
. 7.01(e).  Rodgers contends that the trade name rule prohibits only the use of deceptive trade names and that rule 7.01(a) defines trade name as “a name that is misleading as to . . . identity.”  

We reject Rodgers’s interpretation of rule 7.01(a).  By its plain language, the rule prohibits a lawyer’s use of three types of names:  (1) a trade name; (2) a name that is misleading as to the lawyer’s identity; or (3) a firm name with names other than those of the lawyers in the firm.  
Id
. 7.01(a); 
see
 
Tex. Gov’t Code Ann.
 § 311.011(a) (Vernon 1998) (providing that “[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage”).  We have previously defined a “trade name” as “a designation that is adopted and used by a person either to designate a good he markets, a service he renders, or a business he conducts.”  
C.R.
, 54 S.W.3d at 515.  Moreover, comment 1 to rule 7.01 notes that “[t]rade names are inherently misleading.”  
Tex. R. Disciplinary Conduct
 7.01 cmt. 1.  And, in ruling that rule 7.01 does not infringe on the First Amendment’s protection of commercial speech, a federal district court has recognized the inherent risks of even a nondeceptive trade name used in attorney advertising because, by not identifying the name of the professional practicing under the trade name, the name frees the professional from dependence on his own personal reputation.  
Texans Against Censorship
, 
Inc.
, 888 F. Supp. at 1350 (analogizing to United States Supreme Court opinion regarding risks of use of nondeceptive trade name in optometrists’ practices and holding rule limiting use of trade names constitutional).  Thus, we conclude that to be prohibited under rule 7.01 a trade name does not have to be facially deceptive. 

The evidence at trial showed that the advertisements Rodgers placed in the telephone books contained the name “Accidental Injury Hotline,” but not Rodgers’s name or any other attorney’s name.  Rodgers obtained a copyright on the name “Accidental Injury Hotline,” registered a service mark for the hotline, and received more than fifty percent of his business from the hotline.  Rodgers admitted to starting the hotline solely as an advertisement for his business because he thought “informational positioning,” or providing helpful information to consumers to position the provider as knowledgeable, was the best way to obtain customers through advertising.  The evidence also showed that the only place Rodgers used the name was in the advertisements; however, the fact that Rodgers used the name in only one facet of his business does not outweigh the evidence that with regard to the only medium in which he advertised his business, he used the name to 
designate a service he rendered or a business he conducted.  We hold that the evidence is both legally and factually sufficient to prove Rodgers violated rule 7.01(a) and (e).  We overrule Rodgers’s second issue.

Violation of False or Misleading Advertising Rule
 

Rodgers further contends that the evidence is legally and factually insufficient to prove that he violated rule 7.02(a) by making a false or misleading communication.  Rule 7.02 provides as follows:

(a) A lawyer shall not make a false or misleading communication about the qualifications or the services of any lawyer or firm.  A communication is false or misleading if it:

(1) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;

(2) is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate these rules or other law;

(3) compares the lawyer's services with other lawyers' services, unless the comparison can be substantiated by reference to verifiable, objective data;

(4) states or implies that the lawyer is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official; or

(5) designates one or more specific areas of practice in an advertisement in the public media or in a written solicitation unless the advertising lawyer is competent to handle legal matters in each such area of practice. 

Tex. R. Disciplinary Conduct
 7.02(a).

Rodgers claims that federal case law regarding the Lanham Act and trademark infringement cases required CLD to introduce evidence that at least one person was actually confused by Rodgers’s advertisement.
(footnote: 1)  But Rodgers cites no authority applying this requirement outside the context of those cases, including the attorney disciplinary context.  And the only case this court found addressing this issue in the professional disciplinary-advertising context concluded that the State of Maryland did not have to prove that a specific customer had been misled or deceived by the advertising.  
See Barnett v. Md. State Bd. of Dental Exam’rs
, 444 A.2d 1013, 1020 (Md. 1982).

Rule 7.02 itself does not require evidence of actual confusion.  In the only other reported case from this State that we have found, 
Musslewhite v. State Bar of Texas
, 786 S.W.2d 437 (Tex. App.—Houston [14th Dist.] 1990, writ denied), 
cert. denied
, 501 U.S. 1251 (1991), the court held that an attorney’s press release, letters, and advertisements were false and misleading on their face because they referred to a “team of internationally renowned U.S. lawyers” but did not identify those lawyers, and the information in them was not “susceptible to reasonable verification by the public.”  
Id
. at 441.  The court did not require any showing that one or more persons had been actually confused or misled by the materials.

The purpose of the rules is to protect the public from deceptive advertising, which the Supreme Court has recognized as a substantial governmental interest.  
Texans Against Censorship, Inc.
, 888 F. Supp. at 1348 (citing 
Edenfield v. Fane
, 507 U.S. 761, 768, 113 S. Ct. 1792, 1799 (1993)).  A federal court has recognized that one advantage to Texas’s advertising filing requirements is that

the state bar is not required to rely on consumers, who may not have enough information about the legal system in general, or a particular lawyer, to detect false or misleading advertising from lawyers.  The state bar will not be forced to rely hereafter on consumers, to find deceptive advertising or misleading solicitation letters.  Instead, the filing process will enable the state bar itself to winnow false or deceptive advertising from truthful advertising.

Id
. at 1364.

The evidence at trial showed that the advertisements did not identify Rodgers, the only attorney available through the hotline was Rodgers, and the caller did not learn the name of the attorney he would be referred to until he pressed “0.”  Thus, the only way a person could verify which attorney’s office he would be speaking to was to actually connect to the attorney’s office.  This type of advertising creates the same types of problems as the use of a trade name, which is inherently misleading:  a potential consumer has no name or other information to help her evaluate whether she wants to contact a particular attorney prior to being connected to that attorney’s office.  In fact, this advertisement is similar to a sample advertisement that the State Bar published as an example of a noncompliant advertisement in a 1995 Texas Bar Journal article that Rodgers included as one of this trial exhibits.  That advertisement listed no attorney name or office information, just a telephone number and two trade names, “Child Support & Locating Clinic” and “Debt Relief Clinic.”  58 
Tex
. B.J. 664 (1995).  

We hold that the evidence is legally and factually sufficient to support the jury’s finding that Rodgers made a false or misleading communication in violation of rule 7.02(a).  We overrule Rodgers’s first issue.

Whether Presence of Required Disclaimers in Second Part of Message Satisfies Rule 7.04

In his third issue, Rodgers claims that as a matter of law, he did not violate rule 7.04(b) and (j), which require that an advertisement in the public media contain certain disclaimers, because even though the disclaimers were not included in the print advertisement, they were included in the audio recording once a customer pressed the button indicating he wanted to speak to an attorney.  He contends that the advertisement becomes a lawyer advertisement only when the caller presses the button indicating he or she wants to speak to a lawyer.  Rodgers concedes, however, that if the disclosures are to be required in the print portion of the advertisement, then he violated rule 7.04(b) and (j).  
Tex. Disciplinary R. Prof’l Conduct
 7.04(b), (j). 

Rodgers contends that we must determine whether the disclaimers were required in the print portion of the advertisement by applying the “anti-dissection” rule set forth in Lanham Act and trademark infringement cases.  Again, Rodgers has not cited any cases indicating that these legal authorities have been applied in an attorney disciplinary case, nor do we believe they are appropriately applied to the attorney advertising context.

Comment 14 to rule 7.04 provides that the rule was meant to protect the public from being misled by attorney advertisements as to “the fees that will be charged, the location where services will be provided, or the attorney who will be performing these services.”  
Id.
 
7.04 cmt. 14.  One of the purposes of the rule is to “prohibit the same sort of ‘bait and switch’ advertising tactics by lawyers that are universally condemned.”  
Id
.

As we have previously discussed, an advertisement can be misleading by omission.  In an advertisement such as Rodgers’s, a caller wishing to speak to an attorney cannot verify any information regarding that attorney before pressing the button to speak to an attorney.  CLD claims that “[o]ne of the fundamental purposes behind Rule 7.04 is to allow consumers to make an informed choice before seeking legal services, by ascertaining the names (and reputations), locations, and qualifications of potential attorneys.”  By not including his name or any of the required disclosures in the print portion of the advertisement, Rodgers violated this purpose.  Thus, we hold that as a matter of law, the disclaimers were required to be in the printed portion of the advertisement.  We overrule Rodgers’s third issue.

Whether Rodgers’s Advertisement Violated Rule 7.07(b)

The jury concluded that Rodgers violated rule 7.07(b) by failing to file the advertisement with the State Bar Advertising Review Committee (ARC) before its first dissemination.  Rodgers disputes this finding on two grounds:  (1) the rule does not apply to advertisements submitted before July 29
, 1995 when the filing requirement first became effective and (2) it was CLD’s burden to procure a finding that the public service announcement exception to the rule did not apply, and CLD did not.  Rodgers argues that because CLD did not conclusively prove the nonexistence of the exemption, he could not have violated the rule.

Whether Pre-1995 Advertisements are “Grandfathered” Out of Rule 7.07(b) Filing Requirements?

Rule 7.07(b) provides that “a lawyer shall file with [ARC], either before or concurrently with the first dissemination of an advertisement in the public media, a copy of that advertisement.”  
Tex. Disciplinary R. Prof’l Conduct
 7.07(b).  Rodgers contends that this rule does not apply to his 1997 advertisement because it was first disseminated in 1994, before the effective date of the rule.  CLD contends that the phrase “first dissemination of an advertisement in the public media” means the first dissemination after the effective date of the rule.  

To determine which interpretation of the rule is correct, we must employ common rules of statutory construction.  
See O’Quinn v. State Bar of Tex.
, 763 S.W.2d 397, 399 (Tex. 1988) (holding that the rules of disciplinary conduct are to be treated like statutes).  Our primary objective in construing a statute is to determine and give effect to the drafters’ intent.  
See Mitchell Energy Corp. v. Ashworth
, 943 S.W.2d 436, 438 (Tex. 1997) (orig. proceeding);
 Finley v. Steenkamp
, 19 S.W.3d 533, 542 (Tex. App.—Fort Worth 2000, no pet.).  If possible, we are to discern intent from the plain meaning of the words of the statute.  
See Albertson’s, Inc. v. Sinclair
, 984 S.W.2d 958, 960 (Tex. 1999);  
Monsanto Co. v. Cornerstones Mun. Util. Dist.
, 865 S.W.2d 937, 939 (Tex. 1993); 
Finley
, 19 S.W.3d at 542.  We do not, however, interpret statutory language so rigidly “that the almost certain intent of the [drafter] is disregarded.” 
 City of LaPorte v. Barfield
, 898 S.W.2d 288, 292 (Tex. 1995); 
Finley
, 19 S.W.3d at 542.  Instead, the court must consider the consequences that would follow from its construction of a statute and avoid absurd results.  
See
 
Tex. Gov't Code Ann
. § 311.023; 
Sharp v. House of Lloyd, Inc.,
 815 S.W.2d 245, 249 (Tex. 1991); 
Finley
, 19 S.W.3d at 542.  Moreover, intent must be determined from the entire act, not from isolated portions thereof.  
See Jones v. Fowler
, 969 S.W.2d 429, 432 (Tex. 1998); 
Finley
, 19 S.W.3d at 543.

The amendments to the advertising rules were promulgated in response to the perception that the prior rules did not adequately protect Texas citizens from false or deceptive lawyer advertising and solicitation.  
See Texans Against Censorship, Inc., 
888 F. Supp. at 1335, 1348.  As an example of the problem the State Bar faced in enforcing the advertising rules, the 
Texans Against Censorship
 case pointed to a misleading attorney solicitation letter that was sent to between 300,000 and 400,000 recipients; none of the recipients ever brought the misleading nature of the letter to the attention of the attorney or the State Bar.  
Id
. at 1364.  The court stated that “[c]learly, if a lawyer is able to distribute 300,000 to 400,000 misleading solicitation letters without reprisal, the state bar’s discernment of an enforcement problem is well-founded.  Moreover, a filing system provides the state bar an effective oversight procedure to prevent consumer deception.”  
Id
.  Thus, the purpose of the filing rules is to provide a more effective mechanism for the State Bar to identify nonconforming advertisements than under the prior rules.

Although an attorney may apply for preapproval of an advertisement, preapproval is not required.  
Tex. R. Disciplinary Conduct
 7.07 cmt. 4.  Rule 7.07 provides that filing may be made “concurrently with” the first dissemination of an advertisement.  
Id
. 7.07(b).  Along with a copy of the advertisement, the attorney must file “a statement of when and where the advertisement 
has been
, is, or will be used.”  
Id
. 7.07(b)(3) (emphasis added).  Furthermore, the rule contains an extensive list of advertisements that are exempt from the filing rules, but does not explicitly exempt advertisements that were first disseminated before rule 7.07 took effect.  
See, e.g., Unigard Sec. Ins. Co. v. Schaefer
, 572 S.W.2d 303, 307 (Tex. 1978) (holding that when statute contains specific exclusions or exceptions, no others usually apply).  

Considering the purpose of the rule, along with the plain language of the entire rule taken together, we construe the rule as requiring an advertisement to be filed upon its first dissemination after July 29, 1995, the effective date of the rule.  Were we to hold otherwise, we would be subverting the purpose of the rule by allowing a significant amount of pre-existing advertising to be exempt from the Bar’s only effective enforcement mechanism for protecting consumers from false and misleading attorney advertising.  
See
 
Tex. Gov’t Code Ann.
 § 311.021 (presuming that public interest is favored over private interest when statute enacted), § 311.023 (providing that in construing statute court may consider “object sought to be attained,” “circumstances under which the statute was enacted,” and “consequences of a particular construction”). 

We hold that the filing requirements of rule 7.07 apply to advertisements previously submitted before the effective date of rule 7.07 that are also being submitted for the first time after the effective date of the rule.  

Who Had the Burden to Prove the Advertisement was not a Public Service Announcement?

An advertisement is not subject to the filing requirement if it contains only information that “the lawyer or firm is a sponsor of a . . . public service announcement.”  
Tex. R. Disciplinary P
. 7.07(d)(1)(x).  The trial court’s charge asked the jury, “Do you find that [Rodgers] published advertisements indicating that he was the sponsor of a public service announcement?”  The jury answered “no” as to all three advertisements.  Rodgers contends the court’s charge misplaced the burden of proof, requiring Rodgers to prove that the advertisement was a public service announcement, rather than requiring CLD to prove that Rodgers did not sponsor a public service announcement.  We disagree.

This case is similar to 
State Bar of Texas v. Dolenz
, in which Dolenz was accused of violating former State Bar Rule 5-104.  3 S.W.3d 260, 266 (Tex. App.—Dallas 1999, no pet.).  Former rule 5-104 provided that “[a] lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.”  
Tex. State Bar R.,
 art. XII, § 8, DR 5-104(A) (Tex. Code of Prof’l Resp.), 34 
Tex. B.J.
 758 (1971, superseded 1990).  There was no evidence in the record showing that Dolenz failed to disclose the situation to the client, nor was there any evidence the client refused consent.  But the Bar contended that whether Dolenz made a full disclosure and whether the client consented was in the nature of an affirmative defense that Dolenz had the burden of proving.  
Dolenz
, 3 S.W.3d at 266-67.

The court of appeals agreed with the Bar, holding that whether the client had consented after full disclosure was a matter constituting an avoidance or affirmative defense to the Bar’s allegation that Dolenz had entered into an improper business relationship with his client.  
Id
. at 267; 
see
 
Tex. R. Civ. P.
 94.  An affirmative defense establishes an independent reason why the plaintiff should not recover on its asserted cause of action.  
Tex. Beef Cattle Co. v. Green
, 921 S.W.2d 203, 212 (Tex. 1996); 
Aviation Composite Techs., Inc. v. CLB Corp.
, 131 S.W.3d 181, 189 (Tex. App.—Fort Worth 2004, no pet.).   

Here, CLD claimed that Rodgers violated rule 7.07(b) by failing to submit the advertisement to the ARC.  Rodgers admits he did not submit the advertisement for review, but contends that he was not obligated to do so because it fits one of the exceptions to the rule.  Thus, Rodgers asserts an independent reason why CLD should not recover on its claim that he violated rule 7.07(b) and had the burden of proof on that issue.
(footnote: 2)  Because Rodgers had the burden of proof, his challenge on appeal that CLD failed to conclusively prove the advertisement was not a public service announcement fails.
(footnote: 3)  We overrule Rodgers’s fourth issue.  

Is Fons’s Testimony Reliable?

Rodgers further complains about the trial court’s admission into evidence of the expert testimony of Lynette Fons, who opined that the advertisements violated the foregoing disciplinary rules.  Rodgers claims that Fons used the wrong legal standards to determine whether violations occurred, that she was unqualified, and that her testimony is unreliable.  Rodgers bases this claim on the fact that Fons’s position did not require her to—and she never attempted to in this case—have contact with the public about the advertisements she reviewed to determine if a member of the public was actually misled by the advertisement.  Also, while she opined that the advertisement was not a public service announcement, she admitted she was not an expert on public service announcements. 

Texas Rule of Evidence 702 governs the admissibility of expert testimony. 
Tex. R. Evid.
 702; 
Gammill v. Jack Williams Chevrolet, Inc
., 972 S.W.2d 713, 718 (Tex. 1998); 
E.I. du Pont de Nemours & Co. v. Robinson
, 923 S.W.2d 549, 554 (Tex. 1995).  Rule 702 provides, “If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.”  
Tex. R. Evid
. 702.

Once the opposing party objects to proffered expert testimony, the proponent of the witness’s testimony bears the burden of demonstrating its admissibility. 
 Guadalupe-Blanco River Auth. v. Kraft
, 77 S.W.3d 805, 807 (Tex. 2002); 
Robinson
, 923 S.W.2d at 557.  To be admissible, the proponent must demonstrate that (1) the expert is qualified and (2) the expert’s testimony is relevant and reliable. 
 See Helena Chem. Co. v. Wilkins
, 47 S.W.3d 486, 499 (Tex. 2001); 
Robinson
, 923 S.W.2d at 556; 
see also Kraft
, 77 S.W.3d at 807.

We review the court's determination under an abuse-of-discretion standard. 
 See Kraft
, 77 S.W.3d at 807; 
Helena Chem. Co.
, 47 S.W.3d at 499; 
Robinson
, 923 S.W.2d at 558. To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. 
 See Carpenter v. Cimarron Hydrocarbons Corp.,
 98 S.W.3d 682, 687 (Tex. 2002); 
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. 
Downer
, 701 S.W.2d at 241-42.

An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence. 
 Davis v. Huey
, 571 S.W.2d 859, 862 (Tex. 1978); 
see also Goode v. Shoukfeh,
 943 S.W.2d 441, 446 (Tex. 1997). Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court’s decision. 
 Butnaru v. Ford Motor Co.
, 84 S.W.3d 198, 211 (Tex. 2002); 
Holley v. Holley
, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). An appellate court must uphold the trial court’s evidentiary ruling if there is any legitimate basis in the record for the ruling. 
 Owens-Corning Fiberglas Corp. v. Malone
, 972 S.W.2d 35, 43 (Tex. 1998).

Fons testified that she is a lawyer in Houston and that her primary practice is trial work.  She has been licensed since 1985.  Since June 2002, Fons had been chairperson of the ARC.  She had been a member of the committee since 1998.  Fons testified that the committee meets every month and has reviewed hundreds of attorney advertisements.

Fons testified that she read and spent hours reviewing the disciplinary rules related to attorney advertising, materials the committee provides to lawyers about the advertising rules, and ethics opinions regarding attorney advertising.  She has also given CLE presentations on the advertising rules.  Based on the evidence before the trial court, we cannot say the trial court abused its discretion in determining that Fons was qualified.

Rodgers contends that Fons based her opinions on incorrect legal standards; these contentions correspond to his proposed interpretations of the rules.  Having already rejected Rodgers’s interpretations of these rules, however, we do not believe that the fact Fons did not base her opinions on those interpretations makes her testimony unreliable.  In addition, although she did testify that she was not an expert on public service announcements, CLD was not required to introduce expert testimony as to whether the advertisement qualified as a public service announcement.  As we have previously held, it was Rodgers’s burden to do so.  

Furthermore, even without considering Fons’s testimony, the evidence presented at trial is sufficient to support the jury’s findings; thus, Fons’s testimony was merely cumulative of the other evidence in the case.  
See Tex. Dep’t of Transp. v. Able
, 35 S.W.3d 608, 617 (Tex. 2000).  Accordingly, we cannot conclude that the trial court abused its discretion in admitting Fons’s testimony.  We overrule appellant’s fifth issue.

Did the Trial Court Abuse its Discretion in Setting Rodgers’s Punishment?

Rodgers contends the trial court abused its discretion in sentencing him to a two-year, fully probated suspension because, “under the circumstances of this case, the sanction imposed smacks of punishment for [Rodgers] exercising [his] legal rights to determine how the [rules] should be applied to [his] advertising approach.”  According to Rodgers, the fact that he chose to litigate this issue rather than change his advertisement is justified in light of the prior State Bar ruling that his advertisement did not violate the trade name prohibition and the settlement he entered into with Southwestern Bell, and he should have received no more than a public reprimand.

Sanctions for professional misconduct may include disbarment, resignation in lieu of disbarment, indefinite disability suspension, suspension for a certain term, probation of suspension, interim suspension, public reprimand, and private reprimand.  
Tex. R. Disciplinary P.
 1.06(Y), 
reprinted in
 
Tex. Gov’t Code Ann., 
tit. 2, subtit. G app. A-1 (Vernon Supp. 2004-05).  A trial court has broad discretion to determine the consequences of professional misconduct.  
 
State Bar of Tex. v. Kilpatrick
, 874 S.W.2d 656, 659 (Tex.), 
cert. denied
, 512 U.S. 1236 (1994)
; Curtis v. Comm’n for Lawyer Discipline
, 20 S.W.3d 227, 234-35 (Tex. App.—Houston [14th Dist.] 2000, no pet.);
 Love v. State Bar of Tex.
, 982 S.W.2d 939, 944 (Tex. App.—Houston [1st Dist.] 1998, no pet.)
.  However, the judgment of a trial court in a disciplinary proceeding may be so light or heavy as to amount to an abuse of discretion.  
Kilpatrick
, 874 S.W.2d at 659;
 Love
, 982 S.W.2d at 944.

An appellate court should reverse the trial court’s decision only if an abuse of discretion is shown.  
Love
, 982 S.W.2d at 944.  The court must consider the following factors in determining the appropriate sanction:  (1) the nature and degree of the professional misconduct for which the respondent is being sanctioned; (2) the seriousness of and circumstances surrounding the professional misconduct; (3) the loss or damage to clients; (4) the damage to the profession; (5) the assurance that those who seek legal services in the future will be insulated from the type of professional misconduct found; (6) the profit to the attorney; (7) the avoidance of repetition; (8) the deterrent effect on others; (9) the maintenance of respect for the legal profession; (10) the conduct of the respondent during the course of the CLD action; (11) the trial of the case; and (12) other relevant evidence concerning the respondent's personal and professional background.  
Tex. R. Disciplinary P.
 3.10; 
Kilpatrick
, 874 S.W.2d at 659; 
Curtis
, 20 S.W.3d at 235.

Although a prior State Bar grievance committee determined that Rodgers did not violate the version of the trade name rule in effect in 1994—which did not include the prohibition against advertising under a trade name—a grievance committee decision not to prosecute has no res judicata or collateral estoppel effect,
(footnote: 4) which Rodgers concedes.  In addition, the State Bar was not a party to the 1997 settlement with Southwestern Bell, and there is no evidence that it agreed the advertisement did not violate the advertising rules. 
 See Kilroy v. Kilroy
, 137 S.W.3d 780, 787 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding that one of multiple parties who did not sign rule 11 agreement between other parties was not bound by agreement).  Furthermore, the trial court noted that the ARC gave Rodgers an opportunity to submit the advertisement for review in order to comply with the filing requirement, but he refused to do so.  Finally, Rodgers admitted that he probably would have changed his advertising to appease the ARC or discontinued it altogether if CLD had sued him timely.  In light of the foregoing, we cannot conclude that the trial court abused its discretion in imposing a two-year, fully probated suspension against Rodgers.

Accordingly, we overrule Rodgers’s sixth issue.

Conclusion

Having overruled Rodgers’s issues on appeal, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DELIVERED:  September 23, 2004

FOOTNOTES
1:
Yet Rodgers concedes that this is not required in order for a statute placing boundaries on advertising to pass constitutional muster.  
See, e.g., In re R.M.J.
, 455 U.S. 191, 202, 102 S. Ct. 929, 937 (1982) (holding that regulation is permissible when an advertisement is inherently likely to deceive or has a history of being deceptive).

2:
In his answer, Rodgers placed this contention under the heading of affirmative defense. 

3:
Rodgers does not challenge the jury’s failure to find in his favor on this question.  

4:
See, e.g., Gonzalez v. State Bar of Texas
, 904 S.W.2d 823, 830-31 (Tex. App.—San Antonio 1995, writ denied).