Opinion issued April 4, 2006








     




In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00377-CV




GEORGE R. NEELY, Appellant

V.

COMMISSION FOR LAWYER DISCIPLINE, Appellee




On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2004-56561




O P I N I O N
          Appellant, George R. Neely, appeals from a judgment that he engaged in
professional misconduct in violation of rules 7.02(a), 7.03(a), 7.04(j), 7.05, and 7.07
of the Rules of Professional Conduct (Part VII). Trial was to the court, which also
imposed disciplinary sanctions on Neely. In four issues, Neely challenges the legal
and factual sufficiency of the evidence to support the trial court’s findings of
professional misconduct and to support the sanctions imposed. Neely also contends
that the trial court’s interpretation and application of Part VII violated Neely’s free
speech rights under the First Amendment of the United States Constitution. We
conclude that sufficient evidence supports both the trial court’s professional
misconduct ruling and the sanctions imposed by the trial court and that the trial court
did not violate Neely’s free speech rights under the First Amendment. Therefore, we
affirm.
Background
          On October 15, 2003, Neely and another attorney agreed to represent Gerald
Harris “and others to be signed up by either you or me” for claims against Village
Builders, a homebuilder, for alleged structural problems to homes in Sugar Land. 
Neely arranged a meeting of “interested homeowners” and in, November, 2003,
published a notice about the meeting in the advertisement section of The Greatwood
Monthly, a local newspaper. The first notice appeared, as follows:










Greatwood Homeowners:
 
A meeting of interested homeowners will be held at the Recreational
Center, 7225 Greatwood Parkway, Sugar Land, Texas 77479 on Friday,
November 21, 2003 from 6:30 p.m. - 9:00 p.m. to discuss the structural
problems of houses in your neighborhood, including foundation
problems, which were built by VILLAGE BUILDERS. All Greatwood
homeowners are invited to attend the [sic] exchange information with
your neighbors concerning structural problems to your houses.
 
For additional information call
George R. Neely at
713-521-9666
 
          The meeting was held on November 23, 2003. At the meeting, Neely placed
a stack of his resumes on a table available to any interested attendees. During the
meeting, Neely explained that he might file a class action lawsuit against Village
Builders and that he handled his cases on contingency. Neely told one attendee that
attendees had the option of hiring Neely as their counsel. Further, Neely joked with
another attendee by stating that “maybe you should have hired me.” After the
meeting, at least two attendees received follow-up calls from Neely’s co-counsel
regarding filing claims against Village Builders. Neely, or his co-counsel, also signed
up at least three clients after the meeting was held. At least two of those clients
attended the meeting. Village Builders filed a grievance against Neely, complaining
about the notice and the meeting. On March 23, 2004, Neely filed a class action
lawsuit against Village Builders. 
          Subsequently, in June, 2004, Neely ran a second notice in The Greatwood
Monthly, stating that a class action lawsuit had been filed against Village Builders.
The second notice appeared, as follows:

Greatwood
Homeowners:
 
A class action lawsuit has been filed against 
 
Lennar Homes of Texas Sales and Marketing, Limited d/b/a Village Builders 
 
in the 400th District Court of Fort Bend County, Texas.
 
This Class Action Lawsuit will seek recovery of damages for all Homeowners who
qualify as Class Members.
 
You may review the public filings at the Courthouse or call
 
George R. Neely
at 713.521.9666
 
in Houston, Texas to obtain further information about the lawsuit.

  
          In July, 2004, Neely, who was having personal problems and needed the cases
financed, hired Caddell & Chapman to take over the case. On August 4, 2004,
Caddell & Chapman amended the original petition by dropping the assertion of the
class action lawsuit, opting instead to pursue individual cases.
          On October 7, 2004, appellee, Commission for Lawyer Discipline (the
Commission), filed a disciplinary action against Neely. The case was tried to the
bench on March 17, 2005, and the trial court signed its final judgment of partially
probated suspension on March 31, 2005, imposing sanctions against Neely for
professional misconduct in violation of rules 7.02(a)(1)–(2); 7.03(a); 7.04(b)(1),
(b)(3), (j); 7.05(a)(3), (b)(1)–(2); and 7.07(a), (b)(1), (b)(3)–(4) of the Disciplinary
Rules of Professional Conduct. The sanctions included a three-year suspension from
practicing law, including a nine-month active suspension. The trial court also
awarded attorney’s fees to the Commission.
Sufficiency of the Evidence
          In his issues one and three, Neely challenges the sufficiency of the evidence. 
Neely contends that Part VII does not apply to the notices at issue in this case because
the notices do not propose a commercial transaction or professional employment and
thus are not commercial speech. The Commission contends that the notices were
advertisements subject to Part VII because Neely was attempting to solicit business
by notifying the public of a meeting that was subsequently held by Neely and by
notifying the public of a lawsuit Neely had filed. We conclude that sufficient
evidence supports the trial court’s ruling that Part VII applies to Neely because one
of the notices constitutes commercial speech as defined by the United States Supreme
Court. More specifically, we conclude that rule 7.02 of the Disciplinary Rules of
Professional Conduct applies to that notice and to Neely.
A.      Standard of Review
          A request for findings of fact and conclusions of law is not required to question
the sufficiency of the evidence. Pruet v. Coastal States Trading Co., 715 S.W.2d
702, 704 (Tex. App.—Houston [1st Dist.] 1986, no writ). However, when no party
requests findings of fact or conclusions of law, as here, “[i]t is therefore implied that
the trial court made all the findings necessary to support its judgment.” Worford v.
Stamper, 801 S.W.2d 108, 109 (Tex. 1990). Accordingly, we must presume that the
trial court found all questions of fact in support of the judgment and affirm the
judgment if it can be upheld on any basis. Point Lookout W., Inc. v. Whorton, 742
S.W.2d 277, 278 (Tex. 1987); see also Worford, 801 S.W.2d at 109 (stating that
appellate court must affirm judgment “if it can be upheld on any legal theory that
finds support in the evidence”). To determine whether evidence supports the
judgment and the implied findings of fact, we generally consider “only that evidence
most favorable to the issue and . . . disregard entirely that which is opposed to it or
contradictory in its nature,” Worford, 801 S.W.2d at 109, unless “there is no
favorable evidence . . . , or if contrary evidence renders supporting evidence
incompetent . . . or conclusively establishes the opposite.” City of Keller v. Wilson,
168 S.W.3d 802, 810–11 (Tex. 2005).
B.      Professional Misconduct
          Part VII applies only to commercial speech. Texans Against Censorship, Inc.
v. State Bar of Tex., 888 F. Supp. 1328, 1342–1343 (E.D. Tex. 1995), aff’d 100 F.3d
953 (5th Cir. 1996). The comment to Part VII states the following:
The Rules within Part VII are intended to regulate communications
made for the purpose of obtaining professional employment. They are
not intended to affect other forms of speech by lawyers, such as political
advertisements or political commentary, except insofar as a lawyer’s
effort to obtain employment is linked to a matter of current public
debate.

Tex. Disciplinary R. Prof’l Conduct 7.02 cmt. 1, reprinted in Tex. Gov’t Code
Ann., tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R. art. X § 9). The
Supreme Court has similarly defined commercial speech as that which proposes a
commercial transaction between the sender and the receiver of the message; it is
speech “related solely to the economic interests of the speaker and its audience.” 
Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm’n of N.Y., 447 U.S. 557,
561–62, 100 S. Ct. 2343, 2349 (1980). Whether speech is commercial or
noncommercial in nature is a “commonsense” determination. Hudson, 447 U.S. at
562, 100 S. Ct. at 2349. Specifically, “lawyer advertising is commercial speech.” 
Fla. Bar v. Went For It, Inc., 515 U.S. 618, 623, 115 S. Ct. 2371, 2375 (1995). 
          For a legal communication to be subject to Part VII, it must be commercial
speech that proposes professional employment by suggesting “[t]o the public, or a
specific individual, that the lawyer’s professional services are available for hire.” 
Texans Against Censorship, 888 F. Supp. at 1344. Specifically, Part VII does not
apply when “anyone reading [the communication] . . . would not likely think it was
published for the purpose of obtaining professional employment.” Id. Thus, to
determine whether the communication is commercial speech within the ambit of Part
VII, a reviewing court must first determine from the face of the notice whether there
is any evidence that the attorney is proposing a commercial transaction. Id. at 1342. 
If the court determines from the face of the communication that it is not commercial
speech, then Part VII does not apply. Id. at 1343. If there is evidence, however, from
the face of the communication, that the attorney is proposing a commercial
transaction and thus the speech is commercial, the reviewing court may look to see
if Part VII applies by considering evidence that the communication was “made for the
purpose of obtaining professional employment.” See Tex. Disciplinary R. Prof’l
Conduct 7.02 cmt. 1.
           Neely contends that the notices, on their faces, are not subject to Part VII and
thus were not “advertising” Neely’s services to bring them within the ambit of Part
VII. Neely contends that Texans Against Censorship is dispositive of this issue
because Neely’s notices do not suggest that “Neely is a lawyer, or that he has made
his professional services available for hire.” In Texans Against Censorship, an
attorney published a notice in the Pasadena Citizen concerning whether the current
system of electing state judges in Texas should be changed.


 888 F. Supp. at 1343. 
Although the attorney admitted that he hoped to generate business as a result of
publishing the notice, it did not propose a commercial transaction on its face. Id. at
1344. Because a reader of the advertisement would not likely think that the attorney
intended to obtain clients, the court held that the advertisement was noncommercial
speech, and Part VII did not apply.


 Id. But when the message conveyed by the
communication suggests that the lawyer’s professional services are available for hire,
then the communication is commercial speech that must meet the requirements of Part
VII. Id.
          Misleading commercial speech receives no First Amendment protection. See
Hudson, 447 U.S. at 563, 100 S. Ct. at 2350 (stating, “government may ban forms of
communication more likely to deceive the public than to inform it.”). Therefore, “the
government may freely regulate commercial speech that . . . is misleading.” Went For
It, 515 U.S. at 623–24, 115 S. Ct. at 2376. Rule 7.02 of the Disciplinary Rules states
the following:
(a) A lawyer shall not make or sponsor a false or misleading
communication about the qualifications of any lawyer or firm. A
communication is false or misleading if it:
(1) . . . omits a fact necessary to make the statement
considered as a whole not materially misleading[.]

Thus, an omission may be materially misleading commercial speech subject to free
regulation by the government. See Comm’n for Lawyer Discipline v. C.R., 54 S.W.3d
506, 516 (Tex. App.—Fort Worth 2001, pet. denied). “Whatever means are used to
make known a lawyer’s services, statements about them should be truthful and
nondeceptive. Sub-paragraph (a)(1) [of rule 7.02] recognizes that statements can be
misleading both by what they contain and by what they leave out. Statements that are
false or misleading for either reason are prohibited.” Tex. Disciplinary R. Prof.
Conduct 7.02 cmt. 2, 3.
          A notice or advertisement regarding qualifications or services of a lawyer or
firm is inherently misleading when it omits information regarding the identity of the
lawyer or firm and is not susceptible to reasonable verification by the public. See
Rodgers v. Comm’n for Lawyer Discipline, 151 S.W.3d 602, 612–13 (Tex.
App.—Fort Worth 2004, pet. denied) (holding that advertisement that did not identify
lawyer was inherently misleading because “only way a person could verify which
attorney’s office he would be speaking to was to actually connect to that attorney’s
office” and because “potential consumer has no name or other information to help her
evaluate whether she wants to contact a particular attorney prior to being connected
to that attorney’s office”); see also C.R., 54 S.W.3d at 517 (holding fact question
existed as to whether ad for “Accidental Injury Hotline” placed by attorney in yellow
pages section entitled “Attorney Referral and Information Service” rather than section
entitled “Attorneys” contained false and misleading information); Musslewhite v.
State Bar of Tex., 786 S.W.2d 437, 442 (Tex. App.—Houston [14th Dist.] 1990, writ
denied) (holding advertisement referencing “group of internationally renowned trial
lawyers” and team “currently having discussions with a number of United Kingdom
solicitors with a view to filing suit in . . . Texas to obtain maximum damages”
misleading because it did not identify lawyers and suggested that team already had
clients when it did not). 
          Thus, we determine in this case whether there was sufficient evidence for the
trial court to find both that the notices on their faces proposed a commercial
transaction and that Neely published the notices for the purpose of obtaining
professional employment. We next address whether sufficient evidence supports the
trial court’s determination that the omission of information was materially misleading
so as to bring the notices within the ambit of rule 7.02(a).
 
C. Evidence of Proposing Commercial Transaction on the Face of the Notices
          We evaluate the advertisements using their commonsense meanings to assess
whether a notice proposes a commercial transaction and is thus commercial speech. 
See Hudson, 447 U.S. at 562, 100 S. Ct. at 2349. We need not decide whether the
first notice suggests a commercial transaction because we conclude that the second
notice suggests a commercial transaction on its face by indicating that a class action
had been filed, seeking recovery of damages against a specific defendant, Village
Builders, for specific plaintiffs, homeowners who qualified as class members. This
advertisement is unlike the advertisement in Texans Against Censorship that
contained only political commentary with no indication that the purpose of the notice
was to obtain professional employment. 888 F. Supp. at 1343 n.18. This notice
suggests that a class action had already been certified and therefore the case was
applicable to qualified homeowners. We cannot conclude that readers of the second
notice would not likely think it was published for the purpose of obtaining
professional employment. Id., 888 F. Supp. at 1344. We conclude that there was
sufficient evidence for the trial court to find that the notice was disseminated for the
purpose of obtaining professional employment and violated rule 7.02(a), and contrary
evidence neither renders the evidence in support of the trial court’s judgment
incompetent nor conclusively establishes the opposite of the trial court’s judgment. 
See Keller, 168 S.W.3d at 810.
D.      Further Evidence of Purpose of Obtaining Professional Employment
          Neely contends that the notices are not communications about his qualifications
or services disseminated for the purpose of obtaining professional employment
because the purpose of the meeting was merely for information gathering. Because
we conclude that the second notice on its face displays evidence of proposing a
commercial transaction and is thus commercial speech, which brings it within the
ambit of Part VII, we consider evidence of Neely’s intent to obtain professional
employment. 
          We conclude that Texans Against Censorship imposes a threshold requirement
that there be evidence from the face of the communication that the attorney is
proposing a commercial transaction and thus the communication is commercial
speech within the ambit of Part VII. 888 F. Supp. at 1343. Texans Against
Censorship does not, however, reach the issue of whether a reviewing court, after
determining that the attorney communication proposes a commercial transaction, may
consider extraneous evidence to determine whether Part VII was violated.


 Id. at
1344. We conclude that because Part VII is “intended to regulate communications
made for the purpose of obtaining professional employment,” a reviewing court, after
determining from the face of the communication that an attorney is proposing a
commercial transaction and thus the speech is commercial, may consider extraneous
evidence that the communication was “made for the purpose of obtaining professional
employment” in violation of Part VII. See Tex. Disciplinary R. Prof’l Conduct
7.02 cmt. 1.
          The record shows the following evidence that Neely promulgated the notices
for the purpose of obtaining professional employment: The trial court found it “very
troubling” that Neely provided resumes at the meeting. These resumes list major case
experience, including several lawsuits that Neely won with favorable recoveries for
clients. Neely explained to the meeting attendees that he handled cases on a
contingency fee basis and that attendees had the option to hire him. He also joked
with an attendee by stating that “maybe you should have hired me.” 
          We also find the letter sent from Neely to co-counsel Tab Lawhorn on 
October 15, 2003, persuasive regarding their agreement to represent homeowners “in
cases involving Village Builders and the homes built by them in the Greatwood
subdivision in the Sugarland area” because it indicates an intent to obtain
professional employment. Neely stated in the letter that “[i]ncluded in our
representation will be Mr. and Mrs. Gerald Harris, and others to be signed up by
either you or me.” (Emphasis added). The first notice was published approximately
two weeks after Neely drafted the letter.
          Neely asserts that the “entire purpose of the meeting [with regard to the first
notice] was to gather information and to investigate facts in order to determine
whether there was a sufficient factual and legal basis for filing a class action against
Village Builders.” By Neely’s own admission, therefore, he set up the meeting
referenced in the first notice to determine whether he could certify a class and receive
attorney’s fees for a class action lawsuit, which would improve his chances for higher
fees than for a single plaintiff case.


 Although the class action was eventually
dropped, the record shows that after the meeting, Neely signed up at least two clients
on a contingency fee basis who had been present at the meeting. Further, the trial
court, as the trier of fact, is the sole judge of the credibility of the witnesses and the
weight to give their testimony. Keller, 168 S.W.3d at 819. The trial court was thus
entitled to disbelieve Neely and to make the determination that he published the
notices for the purpose of solicitation rather than investigation. See id. We conclude
that there was sufficient evidence for the trial court to find that Neely intended to
obtain professional employment by informing potential clients of the meeting through
the first notice.
E.      Materially Misleading Communication
          Neely argues that his omission of information is not misleading because he did
not intend the notices to help him obtain professional employment and did not
consider either one of the notices to be advertisements. Because we conclude that
there was sufficient evidence that Neely intended to seek professional employment,
we will consider whether the second notice was materially misleading. 
          As set forth above, rule 7.02(a) prohibits misleading communications from a
lawyer about that lawyer’s qualifications or services which omit facts necessary to
make the statement considered as a whole not materially misleading. We need only
address the second notice because we conclude that there was sufficient evidence for
the trial court to find that it proposed a commercial transaction. Because the notice
omits information regarding Neely’s identity as an attorney and is not susceptible to
reasonable verification by the public, we conclude that it is materially misleading. 
See Rodgers, 151 S.W.3d at 613. Although the notice contains Neely’s name and
phone number, it is inherently misleading because the only way a person could know
that Neely was an attorney would be to call and ask him, and there was no way for a
person to evaluate whether he wanted to speak to an attorney before contacting
Neely’s office. See id.
          The second notice is also inherently misleading because it implies that a class
had already been certified and that members of that class would be eligible for
damage recovery: “This Class Action Lawsuit will seek recovery of damages for all
homeowners who qualify as Class Members.” In fact, the class had not been
certified, and the named plaintiffs had signed contingency fee agreements. The
second notice also implies that the reader would be calling the courthouse rather than
an attorney to get information regarding the class action lawsuit: “You may review
the public filings at the Courthouse or call George R. Neely.” This is also inherently
misleading because the only way a person could verify that he or she was speaking
with an attorney would be to call Neely and ask. See id. We therefore conclude that
there was sufficient evidence that the second notice was misleading in violation of
rule 7.02(a). 
          Viewed in the light most favorable to the judgment, we conclude that there was
sufficient evidence that the second notice was published for the purpose of obtaining
professional employment, and that it was a misleading communication about Neely’s
qualifications or services in violation of rule 7.02(a). Because we find that there was
sufficient evidence to support the trial court’s ruling that Neely violated rule 7.02(a),
we need not address whether he violated any other provisions of Part VII.
          We overrule Neely’s issues one and three.
Violation of First Amendment Rights and Severity of Sanctions
          In issues two and four, Neely contends that the trial court’s interpretation and
application of Part VII infringed his free speech rights protected by the First
Amendment of the United States Constitution. Because we conclude that the second
notice was materially misleading commercial speech, we conclude that Neely’s free
speech rights were not violated.
          Neely contends that the notices were noncommercial speech, or, alternatively,
that his free speech rights to protected commercial speech were violated under the
Central Hudson test, because the commercial speech did not concern unlawful
activity nor was it misleading.


 Hudson, 447 U.S. at 566, 100 S. Ct. at 2351. Because
we conclude that the notice was misleading commercial speech, the Central Hudson
test, involving scrutiny of restrictions on protected commercial speech, does not
apply. See id. Moreover, “rule 7.02(a) bans only misleading or false commercial
speech, and thus is not constitutionally infirm.” Texans Against Censorship, 888 F.
Supp. at 1350. We thus conclude that the trial court’s interpretation and application
of rule 7.02(a) did not violate Neely’s First Amendment right to free speech. 
          Neely further contends that the evidence does not support the severity of
sanctions awarded against him under the Rules of Disciplinary Procedure. We review
the sanctions imposed on an attorney for professional misconduct for abuse of
discretion. See Curtis v. Comm'n for Lawyer Discipline, 20 S.W.3d 227, 234–35
(Tex. App.—Houston [14th Dist.] 2000, no pet.). A trial court “abuses its discretion
only when it acts in an unreasonable and arbitrary manner, or when it acts without
reference to any guiding principles.” See Eureste v. Comm'n for Lawyer Discipline,
76 S.W.3d 184, 202 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Further, “[t]he
trial court has broad discretion to determine whether an attorney guilty of professional
misconduct should be reprimanded, suspended, or disbarred.” State Bar v. Kilpatrick,
874 S.W.2d 656, 659 (Tex. 1994). The trial court may consider the following factors
to determine appropriate sanctions:
A. The nature and degree of the Professional Misconduct for which the
Respondent is being sanctioned;
B. The seriousness of and circumstances surrounding the Professional
Misconduct;
C. The loss or damage to clients;
D. The damage to the profession;
E. The assurance that those who seek legal services in the future will be
insulated from the type of Professional Misconduct found;
F. The profit to the attorney;
G. The avoidance of repetition;
H. The deterrent effect on others;
I. The maintenance of respect for the legal profession;
J. The conduct of the Respondent during the course of the Committee
action;
K. The trial of the case; and
L. Other relevant evidence concerning the Respondent's personal and
professional background.

Tex. R. Disciplinary P. 3.10, reprinted in Tex. Gov’t Code Ann., tit. 2, subtit. G
app. A-1 (Vernon 2005). Further, the trial court may consider the attorney’s prior
disciplinary record to assess punishment. Id. 
          The trial court imposed a three-year suspension of legal practice on Neely, with
nine months of active suspension and two years three months of probated suspension. 
The trial judge expressly stated that he had considered Neely’s disciplinary history
and conduct in imposing this sanction. Neely had been disciplined three times before
the imposition of the current sanction, as follows: (1) private reprimand for not
responding to a grievance, in violation of Disciplinary Rule of Conduct 8.01(b); (2)
eight-month probated suspension for taking more fees out of a client’s settlement than
the amount to which Neely and the client agreed, in violation of Disciplinary Rule of
Conduct 1.02(a)(1)(2); and (3) 18-month probated suspension for bringing a frivolous
lawsuit, in violation of Disciplinary Rules of Conduct 3.01, 8.04(a)(1), 8.04(a)(3), and
8.04(a)(12).
A.      Factors Specific to Clients and Case
          Factors C, F, G, J, and K, which are specific to clients in a particular case
weigh heavily in favor of the sanctions imposed upon Neely, specifically factor G, the
avoidance of repetition. Neely had already been sanctioned three times for
professional misconduct: the first, a private reprimand, and the second and third,
probated suspensions. We conclude that the trial court did not abuse its discretion by
imposing a stricter sanction on Neely in order to avoid repetition of his professional
misconduct. We further conclude that there was sufficient evidence of factor F, the
profit to the attorney. As set forth above, Neely signed up clients after the meeting
pursuant to contingency fee agreements. This was sufficient evidence for the trial
court to conclude that Neely profited as a result of his professional misconduct. 
B.      Factors Affecting the Public
          Factors A, B, and E, which affect the public, also favor the sanctions imposed
upon Neely. The disciplinary rules advance a substantial government interest in
protecting the public from false, deceptive or misleading lawyer communications. 
Texans Against Censorship, 888 F. Supp. At 1348–49; Rodgers, 151 S.W.3d at 612. 
The public is entitled to obtain information regarding the identity of the lawyer who
publishes a notice and to be able to verify that information. Rodgers, 151 S.W.3d at
613. Therefore, factors A and B support the trial court’s imposition of sanctions. 
Further, we conclude that factor E supports imposing an active nine-month
suspension on Neely because it will help assure that the public will be protected from
this type of professional misconduct in the future.
C.      Factors Affecting the Legal Profession
          Factors D and H, which affect the legal profession, favor the sanctions imposed
upon Neely. We conclude that whenever an attorney has consistently violated the
disciplinary rules, this damages the legal profession by generally affecting the
reputation of the profession. Further, by imposing an active suspension on Neely, the
punishment could deter other attorneys from similar conduct in the future. 
D.      Other Evidence of Neely’s Professional and Personal Background
          As set forth above, Neely had two prior probated suspensions, one of which
expired three weeks before he published the notices. The trial court awarded
sanctions to the Commission in the form of a three-year suspension, only nine months
of which were active.


 We conclude that in light of Neely’s prior violations, the trial
court did not abuse its discretion by imposing the sanction it did.
          Weighing all the factors for imposition of sanctions, we conclude that the trial
court was well within its discretion in imposing the sanctions on Neely. Accordingly,
sufficient evidence supports the trial court’s imposition of sanctions.
          We overrule Neely’s issues two and four.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Elsa Alcala
                                                             Justice

Panel consists of Chief Justice Radack and Justices Alcala and Bland.